HUNT *v.* MARIANNA ELECTRIC COMPANY.

Opinion delivered October 19, 1914.

1. PUBLIC SERVICE CORPORATIONS—REGULATION BY CITY.—In granting a franchise to a public service corporation to use the city streets, the city may impose proper conditions on the company to secure a suitable and adequate service to the public, which conditions the city may impose in the first instance or after the grant of the franchise, subject to the condition that it may not impair the obligation of any contract made with the public service corporation.

2. MUNICIPAL CORPORATIONS—REGULATION OF PUBLIC SERVICE CORPORATIONS—POLICE POWER.—A municipal corporation may not convey away its right to regulate public service corporations, under its police power.

3. PUBLIC SERVICE CORPORATIONS—ELECTRIC COMPANY—CHANGE IN CURRENT—INJUNCTION.—In the absence of a showing of caprice or bad

faith, an electric company will not be enjoined from changing the kind of electric current to be furnished to its subscribers.

4.  PUBLIC SERVICE CORPORATIONS—ELECTRIC COMPANY—CHANGE IN CURRENT.—The managing officials of an electric company, engaged in furnishing electric current to the public, have a right to change its system and method of operation, as in the honest judgment of the officials, is necessary to a proper service of the public.

5.  PUBLIC SERVICE CORPORATIONS—ELECTRIC COMPANY—CHANGE IN CURRENT—DAMAGE TO SUBSCRIBER—LIABILITY.—Where an electric company changes the kind of current supplied to its subscribers so as to render useless the fixtures belonging to appellant, a subscriber, in the absence of a showing that the change was needlessly and capriciously made, the electric company will not be required to make good to appellant the loss occasioned by the change.

Appeal from Lee Chancery Court; *Edward D. Robertson*, Chancellor; affirmed.

STATEMENT BY THE COURT.

Appellants, who were the plaintiffs below, alleged in their complaint that they were subscribers and users of electricity furnished by the Marianna Electric Company, the appellee, which company was the defendant below. That this electric company is a public service corporation engaged in the business of furnishing electricity for light and power to all the citizens of the city of Marianna, and that at the present time, and for a number of years heretofore, the said company has been operating a system or plant in which the generator of electricity used in operating the plant produced what is known as a 133-cycle current of electricity, and that plaintiffs had installed motors and machines for conducting their business, so constructed and adjusted as to be operated by this 133-cycle system used by the defendant company, and that their various motors and machines were installed with the view and for the purpose of meeting the requirements of said electric company and of using the electricity as furnished by it. That the said electric company is now undertaking and proceeding to change the kind and character of machinery operated by them into what is termed a 60-cycle system so that the said system will not operate the motors used by the plaintiffs

herein and by the citizens generally in the city of Marianna, and that the said company is demanding of the subscribers to its current of electricity that they bear the expense of the readjustment and repairs to their various motors and fans so that they can be operated by the said electric company, which expense will aggregate in amount a sum in excess of a thousand dollars. Plaintiffs further allege that they had demanded of the electric company that it readjust their motors, fans and machines so that they would be adapted to the new plant proposed to be installed to the end that the electric company might carry out its contract and agreement with them and the public to properly serve electricity, but that the said electric company refuses so to do, and is proceeding to change its system, the result of which will be to put out of use all the motors and other electrical appliances owned by the citizens and will result in great and irreparable injury to them in the stopping of their various lines of business. And other grounds of equitable relief were alleged.

Plaintiffs twice amended their complaint, and the effect of these amendments, so far as it is material to state, was to allege that the motors owned by them were, in many instances, purchased from the defendant itself and that, in some cases, these purchases had been recently made with the knowledge on the part of the defendant as to the uses intended to be made of them, and that they had offered to allow the defendant to change, alter or repair their various appliances so that they would be adapted to the change in the system, and that the former service of the defendant had been satisfactory, but that since the change in the system had been made they were without service. And they further alleged that the defendant company had the exclusive franchise from the city of Marianna for the operation of an electric light plant in said city so that the plaintiffs had no opportunity to purchase electric power from any other concern or to organize one themselves.

The court sustained a demurrer, which was interposed to these various pleadings, and dismissed the complaint for want of equity.

The court in its decree recited its finding to be that the matter of the kind or character of current furnished by the company, so long as it was within the bounds of its franchise, was a matter of detail or administration and that the court was without power to interfere to prohibit the proposed change being made.

Certain questions of pleading are raised which we find it unnecessary to discuss.

Plaintiffs have duly prosecuted this appeal from the decree of the court dismissing their complaint, as amended, for the want of equity.

*Roleson & McCulloch,* for appellants.

The right of the electric company, having due regard to the interest of the public, to install any new machinery or any advanced appliances to the end that the service might always be adequate, and the public receive the best service from the corporation, is conceded; but that question does not arise here. The complaint alleges that the old method of transmission was complete, effective and satisfactory, and that the change to the 60-cycle method of transmission was arbitrary and unnecessary, and is alone for the benefit of the defendant.

The case presents a question of the violation of an implied contract, for the breach of which injunction will lie. When the company represented to the public the particular kind of service they intended using, and the public acted in reliance thereon, there arose a binding agreement between the parties to give and to receive this kind of service. 61 L. R. A. 57, 58; 7 Harvard Law Review 58, 59.

It is a condition precedent to any liability on the part of an electric company that the consumer provide himself with the proper kinds of appliances and be ready to accept the service of the company. 46 L. R. A. (N. S.) 437. When the consumers have so supplied themselves

pursuant to the representations made by the company, is it equitable and just to permit the company, arbitrarily and solely for its own profit, to disregard and destroy the property rights of its patrons, and so change the service as to compel them to incur great additional expense?

*Daggett & Daggett,* for appellees.

1.    The courts have the power to compel the full and faithful performance of the duties which the company owes to the public, which may be summed up to be (1) the duty to furnish the commodity contracted for in a safe and convenient form, (2) to furnish the same without discrimination, and (3) at a reasonable price; but the power of the court does not extend to the ordering or directing the company to perform those duties in any particular manner, nor to matters of administration or detail. If it is not its *duty* to improve its system, it certainly has the *right* to so alter or change its method of generation as to make it most convenient to the company.

It is not the duty of the company to install, maintain or repair the fixtures or appliances used by the public in the consumption of the electric current, but the duty of the consumers, and it being their duty, they supply themselves at the risk of such changes as modern and improved conditions may bring about in order to meet the demands of increase in consumption. 26 Am & Eng. Ann. Cas. 56, 58, 60, 61; 160 Cal. 410; 173 U. S. 684; 24 L. R. A. (N. S.) 485, 487; 132 S. W. 288.

2.    It is conceded by appellants that it is the right of the company to "keep abreast of the times" and maintain an adequate and modern system consistent with the needs of the public. Since it is the duty of the company both by law and by contract, to maintain a *standard* system, and since the 133-cycle system is now obsolete and the 60-cycle system standard, which is a matter of common knowledge of which this court may take judicial notice, the case, we think, falls squarely within the right conceded by appellants. 1 Chamberlain on Ev. § 809; *Id.* § 794.

SMITH, J., (after stating the facts). (1-2) It does not appear from the pleadings in this case why the change in the system was made. For aught we know from the pleadings, it may have been ordered by the city council, but, however that may be, it may be assumed from the state of the pleadings that the change was permitted by the council. We can not know what the terms of the franchise were under which appellee company was operating, as that information is not disclosed in any of the pleadings; but we do know that such matters are within the control and under the regulation, to some extent, of the city council. In the matter of granting franchises involving the use of the city streets the city has the right to impose proper conditions to secure a suitable and adequate service to the public. It may not only impose these conditions in the first instance, but it may impose conditions after the grant of the franchise, subject only to the condition that it may not impair the obligation of any contract made with the public service corporation. But, not even by contract, can the city convey away its right of regulation under the police power. *Hot Springs Electric Light Co.* v. *Hot Springs,* 70 Ark. 300.

(3-4) Notwithstanding the allegation of the pleadings that the service formerly rendered by the electric company was satisfactory and sufficient, it is not alleged that the change was needlessly and capriciously made, and even though there may have been no municipal requirement in regard to this change, the electric company would have the right to make such change in its system and method of operation as, in the exercise of an honest judgment on the part of its managing officials, was necessary to a proper service of the public, and there is no allegation that the change was not an advantageous one from the standpoint of the general public, although it is alleged that it was an unnecessary one from the standpoint of these plaintiffs.

Counsel have not cited us to any case discussing or deciding the questions here involved, and we have been unable to find any, and accordingly we have been com-

pelled to decide this case upon a consideration of what appears to be the general principles involved.

(5)   It is urged as a reason against the right of the electric company to make this change that there existed an implied contract between appellant and the company that a current should be furnished them which would permit the use of the fixtures which they owned and which, in some instances, had been bought, and recently bought, from the company itself.   If this is true, no change could ever be made, for it would hardly happen that all fixtures would cease to be serviceable at the same time, and if a change was ever to be made it must necessarily be true that, when it was made, there would be some fixtures which would still be serviceable and have a usable value with the supply of the old current.   The pleadings concede the duty of the users of the electricity to furnish their own appliances, but this, they say, they have done and they call upon the company to make such adjustments as are necessary to adapt their fixtures to the new system or to furnish them with new appliances; and we conceive the question in the case to be whether or not the company is under any duty to perform this service, or whether that expense should be borne by the plaintiffs. In our judgment, it not having been alleged that the change was needlessly or capriciously made, we think this expense should be borne by the plaintiffs.   Otherwise, having become a part of the operating expense of the company, this would be an item to be considered in fixing the rates to be charged all consumers of electricity and would be an expense to be borne at least by the public generally, rather than those owners who were required to supply themselves with new appliances.

We are much impressed with the reasoning of the Court of Appeals of Missouri in the case of *Fisher* v. *St. Joseph Water Co.*, 132 S. W. 288, where, in a discussion of a question involving, to some extent, the principles here involved, it was said:

''Whether a public utility, such as a system of waterworks, be owned and operated by the municipality or

by a private corporation, the consumers in the long run must pay, not only the operating expenses of the business, but also the whole cost of construction and expense of maintenance and betterments, together with a reasonable profit on the investment, if the business be in the hands of a private corporation. It would seem to be more fair and just that each consumer should bear the construction expenses relating exclusively to his own service than that the gross sum of all such expenses should be ratably assessed against all the consumers through the medium of an increased charge for the service. In one form or another the consumers must foot all the bills, and we think it is reasonable, so far as it may be done, to make each pay for what he gets.''

It is no doubt true that these plaintiffs, from their standpoint, will be required to incur an expense without fault on their part; but some one at last must bear this expense, and we think that burden must fall upon them. Opportunity for wide choice exists in the selection of appliances for the use of the electric current, and interminable confusion might ensue and great injustice be done if the company was required to take into account these various opinions and preferences resulting from the change in appliances. It was the duty of the plaintiffs in the first instance to furnish their own appliances, and the change of system not having been made needlessly or capriciously we think it equitable that they should acquire, at their own expense, such fixtures as are adapted to their purposes to receive the current under the new system.

Moreover, there are no allegations in the complaint from which it could be said that there was any privity of contract requiring the company to furnish the appellants with any particular kind of current.

There was an allegation in the complaint that the change in the system was made without notice to certain owners, who, in ignorance of the change, turned on the current of the new system whereby their motors were

burned out and otherwise damaged. We have not thought it proper or necessary to consider in this case the question of the liability of the electric company to such owners, and, if they have any cause of action growing out of a failure to give notice of the change, it is not concluded by this opinion.

The decree of the court sustaining the demurrer will, therefore, be affirmed.

McCULLOCH, C. J., disqualified and not participating.