[Civ. No. 1527.   Third Appellate District.—October 10, 1916.]

## TUOLUMNE COUNTY ELECTRIC POWER AND LIGHT COMPANY (a Corporation), Appellant, v. CITY OF SONORA (a Municipal Corporation), Respondent.

MUNICIPAL CORPORATION—LIABILITY FOR ELECTRICITY FOR STREET LIGHTING—FAILURE OF PROOF.—An electric light and power company engaged in furnishing electricity for lighting dwellings, business places, and streets of a municipal corporation, cannot recover in an action against the city for current consumed in the street lights between the hours of 7 o'clock A. M. and 4:30 o'clock P. M., where the complaint alleges that such current was furnished at the instance and request of the municipality, but the evidence shows that the city expressly notified the power company that it would only pay for electricity furnished between the hours of 4:30 oclock P. M. and 7 o'clock A. M.

APPEAL from a judgment of the Superior Court of Tuolumne County.   G. W. Nicol, Judge.

The facts are stated in the opinion of the court.

J. B. Curtin, and W. H. Mahoney, for Appellant.

J. C. Webster, for Respondent.

BURNETT, J.—The action was for the recovery of the sum of $2,425.37 for electrical energy claimed to have been furnished by plaintiff and consumed by defendant in the street lights of said city. For years plaintiff, which is a public service corporation purchasing its electricity from the

Sierra and San Francisco Power Company and then selling it to consumers, has been engaged in furnishing electrical energy for lighting dwellings, business places, and the streets in said city of Sonora. From its substation along the side of Washington Street, the main street of said city, for more than ten years prior to October 1, 1913, the plaintiff had two main power lines, and to these, other lines extending along the sides of the other streets were attached, thus forming the system by which electric lights were furnished for houses and streets. During these years, one of these main lines from the substation carried what is called the day circuit current of twenty-four hours, the other, what is called the night circuit current, both of which currents were turned on and off at said substation. The night circuit was loaded one-half hour after sunset and turned off one-half hour before sunrise—this period being recognized generally as the standard hours for street lighting, and the day circuit was left continuously turned on so as to have twenty-four hours always of continuous service on that line. More than ten years prior to October 1, 1913, the trustees of said city, for the purpose of lighting the streets, caused wires from the center of the street to be connected with plaintiff's night service main line, an incandescent light being attached to the end of each of these wires. The light was anchored on the opposite side of the street so that each light would be suspended over the middle of the street at a given height. By this method, most of the streets were lighted during this period of time, and all street lights were connected with and received current from plaintiff's night circuit line. During this period the city of Sonora owned all of the wires extending from plaintiff's main night service line into the streets, and also owned all bracket street lamps. When the street lighting system was constructed, no automatic switches or devises of any kind were connected therewith or constructed thereon, so as to turn on or off independent of other consumers' hours, any of the street lights, the entire street lighting system being regulated as to that by a switch at said substation, controlled and operated by the Sierra and San Francisco Power Company. As the electric current flowed through the said main night circuit line, it ran out into the street lamps and bracket lamps, and thus the streets were lighted.

With knowledge of these facts and without any previous notice to plaintiff, the trustees of Sonora on September 15, 1913, adopted and passed to print, to take effect on October 1, 1913, the ordinance in controversy here, which, appears in full in the transcript. The title of said ordinance is: "An ordinance fixing the rate which may be charged and collected by any person, firm, or corporation furnishing, distributing, or delivering electric current for lighting, heating, power and other purposes to the inhabitants of the city of Sonora, California; providing for the installation of meters and regulating the installation of electric current and prices to be charged for labor and supplies therefor, and fixing a penalty for the violation of any of the provisions of the ordinance." Section 11 provided: "Electric current furnished or distributed to consumers in the city of Sonora, except for street lights, shall be an all day and all night service and shall be furnished every day for twenty-four hours each day, and electric current furnished for street lighting shall be from 4:30 P. M. of each and every day to 7 o'clock A. M. of the following morning." This section, it may be said, was amended on the 18th of June, 1914, so as to read: "Electric current furnished or distributed to consumers in the City of Sonora, except for street lights, shall be an all day and all night service and shall be furnished every day for twenty-four hours each day, and electric current furnished for street lighting shall be from one-half hour after sunset to one hour before sunrise each night."

When plaintiff saw the publication of this ordinance of September 15th, it addressed the following letter to said trustees:

"Sonora, Cal., Sept. 25, 1913.

"To the Trustees of the City of Sonora,

"Sonora, California.

"Gentlemen:

"The Tuolumne County Electric Power and Light Company on and after October 1, 1913, will furnish twenty-four hour service to all it's customers as required by Ordinance No. 63 of the City of Sonora and in order to so do it will be necessary to leave for said twenty-four hours, power on what is now our night circuit. As all the street lighting apparatus for lighting the city streets is the property of the City, it will be necessary for the Trustees of said City to turn off

81 Cal. App.—42

the street lights between seven A. M. and four thirty P. M. each day otherwise the power thus used between said hours will be charged for as provided in said ordinance.

"The obligation of this Company ceases when it furnishes power to the city's connection. . . ."

The street lights were not turned off, and the city of Sonora enjoyed the unique and illuminating experience of street lamps burning day and night. In passing, it may not be amiss to venture the conjecture that strangers must have regarded with some degree of astonishment, if not of admiration, the spectacle of prodigality thereby exhibited.

Plaintiff presented its bill for the whole amount of electric energy consumed by said lights, and it was allowed for the said hours so contemplated by said section 11. Plaintiff declined to accept such payment in full and hence the suit.

Appellant contends in the first place that "the duty of such a corporation is fully performed when it has brought its commodity safely and conveniently to the door of the consumer. Within that door the company is not by law obliged and may not by law be compelled to go for any purpose foreign to the public service it is called upon to render, and that the purpose here contemplated is foreign is abundantly established." (*Ex parte Goodrich,* 160 Cal. 418, [Ann. Cas. 1913A, 56, 117 Pac. 451, 456].)

It is argued that if the light company desired to raise or lower the lights from their present height across the street, it would have no right or power to do so because the lights and wiring connected with the same belong to the city. So if the company desired to put a longer wire from its main wire to the street lamps, it would have no right to do so for the same reason. It would also have no right to put new lamps on the streets in place of the old ones, or in any manner to interfere with the city's street lamps. These circumstances are mentioned to illustrate appellant's contention that it has done its full duty when it turns on its electrical energy in the main lines to which the city street lamps are connected, and that then it "has brought its commodity safely and conveniently to the door of the consumer and beyond that the company is not by law obliged and may not be by law compelled to go."

Again it is claimed that since the city of Sonora is a consumer of electrical energy, the same rule of law will control

it as would control a private individual, and herein is cited
*Davoust* v. *City of Alameda,* 149 Cal. 70, [9 Ann. Cas. 847,
5 L. R. A. (N. S.) 536, 84 Pac. 761], wherein is quoted the
following from *Touchard* v. *Touchard,* 5 Cal. 307: "A cor-
poration by the civil and common law, is a person, an artificial
person; and although a municipal corporation has delegated
to it certain powers of government it is only in reference to
those delegated powers that it will be regarded as a govern-
ment.   In reference to all other of its transactions, such as
affects its ownership of property in buying, selling, or grant-
ing, and in reference to all matters of contract, it must be
looked upon and treated as a private person, and its contract
construed in the same manner and with like effect as those
of natural persons."

Lastly, it is claimed that when the "company loaded its
electrical energy in its main night service line for the twenty-
four hours required and to which line the city more than ten
years ago, attached its streets lamp wires," it had done all
that could be required of it and then it "became the duty
of the city to take care that it used only so much of that
commodity as it required for street lighting purposes and
not permit any that had entered its doors to go to waste
and to prevent any waste, if it was necessary, to attach or
furnish any appliance to turn on or off the 'commodity'
when not required."   It is insisted that the duty to so at-
tach and furnish said appliance devolved upon the city and
not upon the company.   As authority for this proposition,
attention is directed to *Hunt* v. *Marianna Electric Co.,* 114
Ark. 498, [L. R. A. 1915B, 897, 170 S. W. 96], wherein it
appears that said company for several years had been operat-
ing a system or plant in which the generator of electricity
produced what is known as "133-cycle current of electricity,"
and plaintiffs had installed motors and machines for conduct-
ing their business adapted to this cycle system; that the said
company was proceeding to change the kind and character
of machinery operated by them into what is termed a "60-
cycle system," so that it would not operate the motors used
by plaintiffs and the citizens generally, and that the company
was demanding of the users of its electricity that they bear
the expense of the readjustment and repairs to their various
motors so that they could be operated.   It appears further

that plaintiffs had demanded of the company to readjust said motors for said purpose, to the end that the company might carry out its contract and agreement with them and the public to properly serve electricity, but that the company refused to do so and was proceeding to change its system to the great injury of plaintiffs. It was held that the company was not bound at its own expense to alter the consumers' fixtures so that they would be adapted to the use of the new current, even though many of the fixtures had been bought from the company and were suitable only for the current formerly furnished, it appearing that the change was not made capriciously. The court said: "In our judgment, it not having been alleged that the change was needlessly or capriciously made, we think this expense should be borne by the plaintiffs. Otherwise, having become a part of the operating expense of the company, this would be an item to be considered in fixing the rates to be charged all consumers of electricity, and would be an expense to be borne at least by the public generally, rather than by those owners who were required to supply themselves with new appliances."

It is contended that the rule applies with stronger force here for the reason that plaintiff did not change its system "of its own volition from night service to day service of twenty-four hours. The light company here was compelled to turn in twenty-four hours of load on what it theretofore had only loaded from one-half hour after sunsent to one-half hour before sunrise, and if it failed to do so it was guilty of misdemeanor and subject to a fine," and the claim is that the trustees knew that if they did not put in some device to turn off the current, the lights would burn for twenty-four hours, and hence arises the responsibility of the city for the whole amount consumed.

It is also claimed that from the showing made the inference must be drawn that the whole amount was furnished upon the demand and at the instance and request of defendant city. In this connection, some authorities are cited, among them *Babbitt* v. *Chicago & A. Ry. Co.*, 149 Mo. App. 449, [130 S. W. 367]; Abbott's Trial Evidence, 358, and *San Francisco Gas Co.* v. *San Francisco*, 9 Cal. 453. In the first, it is said: "It has been held that the specific word 'demand' need not be used in making such a request, but it is sufficient if any

words are used which are understood by both parties to be a demand.    Furthermore, it has been held that the existence of a demand may be shown by circumstantial evidence, or may be inferred from the acts and declarations of the parties as proven by direct evidence.''

In the second, it is declared: ''In general, there must be evidence that the defendant requested plaintiff to render the service, or assented to receiving their benefit, under circumstances negativing any presumption that they would be gratuitous.   The evidence usually consists in: First, an express request precedent to the service; or second, circumstances justifying the inference that plaintiff in rendering the services expected to be paid, and defendants supposed or had reason to suppose and ought to have supposed that he was expecting pay, and still allowed him to go on in the service without doing anything to disabuse him of this expectation; or, third, proof of benefit received, not on an agreement that it was gratuitous and followed by an express promise to pay.''

In the San Francisco Gas Co. case, it is held that ''under some circumstances a municipal corporation may become liable by implication.   The obligation to do justice rests equally upon it as upon an individual.   It cannot avail itself of the property or labor of a party and screen itself from responsibility under the plea that it never passed an ordinance on the subject.   As against individuals, the law implies a promise to pay in such cases, and the implication extends equally against corporations.''

Thus far it would seem that the case for appellant is very persuasive, as it appears that it furnished the electric energy, and that it was used by respondent, and the implication would arise that it was furnished at the instance and request of said respondent although attention is called to no direct evidence to that effect.

Another feature, however, is injected into the situation through the action taken by the council when it received the said written notification from appellant that it would furnish electricity for the entire twenty-four hours and hold respondent liable for it.    To that communication the city replied as follows:

"Sonora, Cal., Sept. 27, 1913.

"Tuolumne Co. Elec. Power & Lt. Co.,

"Sonora, California.

"Gentlemen:

"In reply to your communication of the 25th inst. the Board of Trustees of the City of Sonora desire to inform you that the ordinance of the City of Sonora, being Ordinance No. 63, requires any person, firm or corporation supplying electric current for consumption in the City of Sonora for street lighting only from 4:30 o'clock P. M. to 7 o'clock A. M. the following morning, and it requires any person, firm or corporation engaged in that business in the City of Sonora to so furnish electric current for the purpose of lighting the streets, and it prohibits any charge to be made for any electricity furnished in excess of the amount required. See Section 4 of said ordinance. The obligation of such company is to furnish and supply electricity in the manner required by the ordinance and at the times required and its obligation does not cease merely when it furnishes power to the City's connection. *The City will pay for electricity furnished at the time and in the manner provided for in said ordinance and not otherwise, as long as said ordinance remains in effect. Any electric current furnished other than that required by ordinance, unless specifically requested by proper authorities, will not be paid for by the City of Sonora, but must be furnished, if at all, without charge to the City of Sonora.*

"The lighting company is required to equip its system to comply with the requirements of the ordinance. The City does not want street lights at other times than required by the ordinance and is not required to turn off the lights."

The foundation of appellant's cause of action is thus swept away. The theory to which appellant's claim is anchored embodied in the allegations of the complaint is that the electricity was furnished at the *instance and request* of respondent, and to prove this, there must be some evidence either direct or circumstantial that defendant "requested plaintiff to perform the services or assented to receiving their benefit under circumstances negativing any presumption that they were to be gratuitous." In other words, the party to be charged must either directly authorize the services; or by his declarations or silence he must acquiesce in the action of the one performing and avail himself of the services performed.

Here there was neither express promise nor acquiescence, nor was there conduct by silence or otherwise on the part of the city that would justify any expectation that the city would pay for the additional service that was not demanded in said ordinance. To the contrary, the city, by the terms of said ordinance, requested and demanded that the energy be furnished for street lighting during certain hours only, but it went still further and notified appellant by letter that it did not want any longer service, that it had no use for it, and that if it was furnished, it would not pay for it, but it must be furnished gratuitously. If, in the face of this repudiation of any contractual relation as to the extra electricity, the company persisted in allowing the current to flow into the city's lines during the entire twenty-four hours, it certainly cannot claim that it was done "at the instance and request" of respondent.

No case cited by appellant is parallel to this in this essential feature. As we have already intimated, if the city had used said electric energy and remained silent as to remuneration, an altogether different situation would be presented. In such case, the law as well as principles of equitable dealings would create the implication that the service was performed at the instance and request of the city. Assuredly it is not true, as alleged in the complaint, that "plaintiff herein at the special instance and request of defendant has furnished and delivered electrical energy" during the entire period.

Again, it cannot be said in any proper sense that said electrical energy was used by the city during the additional hours already referred to. It answered no municipal purpose. It was well known that the city desired the electricity for lighting the streets, and there was, of course, no such need during the daytime. Instead of being used during said hours, it was simply allowed to go to waste. It was of no benefit whatever to the city and it is true, as found by the court, "that the defendant has never at any time mentioned in plaintiff's complaint had any use whatever for electricity for lighting its streets in the daytime and never at any of said times purchased or procured and accepted electricity from plaintiff for such use, and plaintiff has never at any of said times, at defendant's request, furnished or delivered any electric energy for street lights in the daytime."

It is true that until the said ordinance was amended, the city demanded electricity for a portion of the day, but there is no controversy as to that.

It seems clear that the plaintiff utterly failed to make out its case as presented by its complaint. As far as this action is concerned, it seems immaterial as to whose duty it was to furnish appliances to prevent the waste of electrical energy. If appellant is right in its contention that such burden should be borne by the city, then probably an action for damages would lie for its failure to prevent the waste, but in view of the undisputed showing we do not see how it can be held that an action on contract can be maintained by plaintiff.

The judgment is affirmed.

Chipman, P. J., and Hart, J., concurred.

'A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 7, 1916.