[S. F. Nos. 13375 and 13376. In Bank.—November 1, 1930.]

CITY OF OAKLAND (a Municipal Corporation), Appellant, v. E. K. WOOD LUMBER COMPANY (a Corporation), Respondent.

[S. F. Nos. 13377 and 13378. In Bank.—November 1, 1930.]

CITY OF OAKLAND (a Municipal Corporation), Appellant, v. PACIFIC FUEL AND BUILDING MATERIAL COMPANY (a Corporation) et al., Respondents.

18

Markell C. Baer, Port Attorney, and Hilton J. Melby, Deputy Port Attorney, for Appellant.

Decoto & Calkins, Calkins, Hagar, Hall & Linforth and Clark & Heafey for Respondents.

THE COURT.—The appeals in the cases above entitled are from judgments dismissing the actions after an order sustaining demurrers to the complaints without leave to amend. On stipulation the appeals were ordered consolidated and will be disposed of by one opinion.

The City of Oakland filed two actions against E. K. Wood Lumber Company. In the first action it was alleged that the defendant operated a certain landing place or wharf in the City of Oakland as lessee, pursuant to a lease executed by the City of Oakland to said defendant; that pursuant to the provisions of Ordinance No. 991 (N. S.) establishing the harbor of the City of Oakland and providing for the regulation and control of the landing and mooring of vessels at the exclusive landing places designated therein, the defendant became indebted to the City of Oakland for wharfage and dockage fees due by virtue of the landing and mooring to the defendant's wharf, which is not one of the exclusive landing places established by said ordinance, of vessels belonging to or operated by the defendant without the written permission of the harbor manager first had and obtained and without also paying to the plaintiff any dockage or tolls upon said vessels, etc. The plaintiff by that action sought to recover the amounts to which it would have been entitled had said vessels landed or moored at the exclusive landing places provided for by said ordinance. By the second action against the defendant E. K. Wood Lumber Company the plaintiff, pursuant to the same ordinance, sought to recover amounts alleged to have been collected on its behalf by the defendant, as wharfage and dockage tolls from other persons operating ships arriving and landing at the wharf leased by said defendant. Two similar actions were filed against the defendants Pacific Fuel and Building Material Company et al. as the operators of Pacific Fuel and Building Material Company wharf, also not included by said ordinance as one of the exclusive landing places of the harbor of the City of Oakland, with the

exception that in the latter complaints the source of the right to operate the wharf is not alleged. The time when the tolls, charges, etc., are claimed to have become due to the plaintiff covers a period beginning in February, 1917. The actions were filed in September, 1922.

It is not contended that the complaints do not allege sufficient facts to constitute a cause of action if said Ordinance No. 991 (N. S.) is valid. The main question on the appeals involves the validity of said ordinance in so far as it provides that all vessels, with the exceptions therein stated, shall land or moor at the exclusive landing places established and maintained by the City of Oakland, or shall pay wharfage and other charges in accordance with section 4 thereof.

On May 1, 1911, several hundreds of acres of certain described tide and submerged lands in San Francisco Bay were granted by the state to the City of Oakland (Stats. 1911, pp. 1254, 1258), in trust for use by said city only for the establishment, improvement and conduct of a harbor, and for the construction, maintenance and operation thereon of wharves, docks, piers, etc., without power of alienation except in the granting of franchises for limited periods, or leasing the same or parts thereof for limited periods for purposes consistent with the trust. The act further provided that said harbor shall be improved by the city without expense to the state and shall always remain a public harbor for all purposes of commerce and navigation, but that neither the city nor its successors shall make any discrimination in the rates, tolls or charges or facilities for any use or service in connection therewith.

Pursuant to said grant and said trust, the City of Oakland commenced and completed the construction of wharves and landing places within the area granted by the state. On April 16, 1916, the city council enacted Ordinance No. 991 (N. S.) entitled: "An ordinance establishing the harbor of the City of Oakland, regulating, controlling and restraining the landing and moorage of steamboats, sailing vessels, rafts, tugboats and all other water craft in said harbor, regulating the maintenance and erection of structures and other incumbrances over or in the tidewaters of said harbor, and prohibiting encroachments therein and providing penalties." The ordinance established and de-

clared the entire waterfront and all tidewater and navigable water in the City of Oakland as the harbor of the City of Oakland. Section 3 thereof prescribed certain specified portions of the waterfront as and for the exclusive landings and landing places in said harbor, which are the wharves and landing places controlled and maintained by the City of Oakland. Section 4 of said ordinance provides: ''All steamboats, sailing vessels, rafts, tugboats, and all other water craft (excepting only such vessels, ferryboats and other water craft of any railroad corporation having terminal facilities in said harbor as are operated and exclusively used by it in the conduct of its railroad) shall land or moor at the exclusive landings and landing places hereinabove established and prescribed, and at no other place in said harbor, without the written permission of the harbor manager, first had for that purpose, which shall be granted on payment to the City of Oakland of the dockage, wharfage and tolls which would have accrued to the City of Oakland if such permit had not been granted, and upon compliance with such harbor rules and regulations as are now or may hereafter be provided by the City of Oakland. Provided, however, that nothing herein contained shall be construed to restrain or control the lawful rights of the owner or holder of any valid subsisting franchise, privilege, or lease granted by competent authority.'' The ordinance provided fines or imprisonment for violation of its provisions.

On behalf of the defendants it is contended that the charges attempted to be imposed by the ordinance constitute a tax on vessels entering the port in violation of section 10 of article I of the Constitution of the United States which provides that ''No state shall, without the consent of congress, impose any duty of tonnage''; that the enactment cannot be upheld as a valid exercise of the police power of the city; and that as to the defendant E. K. Wood Lumber Company any collection of such charges as against it pursuant to the terms of the ordinance would unlawfully impair contract rights and constitute a taking without due process inasmuch as said defendant operates its own wharf by virtue of the lease executed to it by the plaintiff city, and that, so it is contended, said lease by its terms also grants the privilege or franchise, irrevocable for the terms of the lease, to collect dockage and tolls from others for the use of the leased wharf.

■ While the right to collect tolls for wharfage and dockage is stated by some authorities to be an incident to the ownership of land abutting on a navigable body of water, the better view is that such a right is a franchise which must have its origin in a legislative grant. (1 Dillon on Municipal Corporations, 5th ed., p. 504, and cases cited.) The right to collect wharfage and dockage tolls is a franchise. (*De Witt* v. *Hays,* 2 Cal. 463, 468 [56 Am. Dec. 352]; *Pacific Coast S. S. Co.* v. *Kimball,* 114 Cal. 414, 417 [46 Pac. 275]; Pol. Code, sec. 2906.) ■ The lease executed by the plaintiff to the defendant, which is annexed to the complaint, does not expressly grant a franchise or privilege to conduct a general wharfage business. The language relied upon as nevertheless conferring the privilege is the following: "No discrimination in rates, tolls, or charges, or in facilities for any use or service in connection therewith, shall ever be made, authorized or permitted by said lessee, its successors or assigns, in the management, conduct or operation of any of the utilities, structures or appliances mentioned in this lease." But such language may not be considered as being effective to add anything to the operative portion of such an instrument which is not expressly granted thereby. Instruments executed by a public body are construed most strongly in favor of the grantor. (Civ. Code, sec. 1069; *Los Angeles* v. *San Pedro etc. R. R. Co.,* 182 Cal. 652 [189 Pac. 449]. In *Pacific Coast S. S. Co.* v. *Kimball, supra,* the grant of the leasehold estate in the wharf and the grant of such a franchise were distinguished, and the former was held not to include the latter, at least so as to constitute the lessee a public utility. Such an incident of the property rights of the operator of a wharf in the absence of a franchise must be deemed to exist, therefore, only until there is a lawful interference by the state or municipality. By its own terms, however, the ordinance excepts from its operation leases granted by competent authority. Pursuant to this exception the defendant's right to use the wharf to land vessels owned or operated by it is preserved and unimpaired, unless the requirement that the defendant's vessels dock at the exclusive landing places named is a valid exercise of the police power.

■ It is recognized that the owner of land riparian to a navigable body of water has no right below the high-tide

line as against the state, the property in and dominion and sovereignty over the soils "covered and uncovered by the flow and ebb of the neap or ordinary tides" having been reserved to the states subject to the rights granted to the United States by the Constitution (*Shively* v. *Bowlby*, 152 U. S. 1 [38 L. Ed. 331, 14 Sup. Ct. Rep. 548]), and on the same equality to California (*Weber* v. *Harbor Commrs.*; 85 U. S. 57 [21 L. Ed. 798]), which holds the title in trust for the benefit of the people for purposes of navigation and fishing (*Ward* v. *Mulford,* 32 Cal. 365, 372). ■ The erection of a wharf, dock or other construction over tide lands by individuals without license is an encroachment upon the sovereignty or a purpresture which belongs to the state as the owner of the soil to which it is affixed. (*People* v. *Davidson,* 30 Cal. 379; *Dana* v. *Jackson Street Wharf Co.,* 31 Cal. 118 [89 Am. Dec. 164]; *Taylor* v. *Underhill,* 40 Cal. 471, 473; *Shively* v. *Bowlby, supra; Weber* v. *Harbor Commrs., supra;* 26 Cal. Jur., pp. 301, 311, 315 et seq., 590 and cases cited.) ■ The right of access which a littoral owner has from his land to the ocean or other navigable body may not prevail as against the state or its grantee in the exercise of a lawful use or purpose. (Const., art. XV, sec. 2; *Boone* v. *Kingsbury,* 206 Cal. 148, 170 [273 Pac. 797], citing *Shively* v. *Bowlby, supra;* 26 Cal. Jur. 301.)

■ By section 3 of article XV of our Constitution all tide lands within two miles of any incorporated city or town fronting on the waters of any navigable harbor, bay, etc., are withheld from grant or sale to private persons or corporations. Rights to erect wharves are vested by special grant, privilege or franchise subject to the same trust by which the title is held by the state. (*Eldridge* v. *Cowell,* 4 Cal. 80; 26 Cal. Jur., p. 591.) In furtherance of the trust for the public benefit and subject thereto, upon which such lands are held by it, the state may grant its tide lands to municipalities (*City of Oakland* v. *Oakland Water Front Co.,* 118 Cal. 160, 185 [50 Pac. 277]; 1 McQuillin on Municipal Corporations, 2d ed., pp. 1020, 1921; 1 Dillon on Municipal Corporations, 5th ed., pp. 474, 481, 496; 26 Cal. Jur., pp. 329, 334, 593, and cases cited), with power to build and maintain wharves for public use and with power to grant leases, privileges and franchises to private persons. (Stats. 1911, pp. 1254, 1258; 26 Cal. Jur., pp. 335, 336;

*City of Oakland* v. *Williams,* 206 Cal. 315 [274 Pac. 328] ; *City of Oakland* v. *La Rue Wharf & Warehouse Co.,* 179 Cal. 207, 212 [276 Pac. 361].)

■ Unquestionably the municipality so vested which has erected or acquired wharves, piers, docks, etc., for the use of the public may make reasonable wharfage and dockage charges for services and facilities rendered and furnished by it, and such a reasonable charge will not constitute a duty of tonnage prohibited by article I, section 10, of the Constitution of the United States. (1 Dillon on Municipal Corporations, 5th ed., p. 513 ; 1 McQuillin on Municipal Corporations, 2d ed., pp. 1017, 1020; *Packet Co.* v, *Keokuk,* 95 U. S. 80 [24 L. Ed. 377] ; *Packet Co.* v. *St. Louis,* 100 U. S. 423 [25 L. Ed. 688] ; *Vicksburg* v. *Tobin,* 100 U. S. 430 [25 L. Ed. 690] ; *Transportation Co.* v. *Parkersburg,* 107 U. S. 691 [27 L. Ed. 584, 2 Sup. Ct. Rep. 732] ; *Huse* v. *Glover,* 119 U. S. 543 [30 L. Ed. 487, 7 Sup. Ct. Rep. 313] ; *People* v. *Roberts,* 92 Cal. 659 [28 Pac. 689].) ■ It is established that neither a state nor a municipality may be permitted to impose a tax upon tonnage under cover of laws or ordinances ostensibly passed to collect wharfage and such ordinances will be carefully scrutinized. (*Packet Co.* v. *Keokuk, supra,* p. 86.) The leading case in which such legislation was held by the Supreme Court to impose a duty of tonnage, and the case mainly relied upon by the defendants as controlling the determination of the question in the present instance, is *Cannon* v. *New Orleans,* 87 U. S. 577 [22 L. Ed. 417]. There the city of New Orleans passed an ordinance which provided for the collection of levee and wharfage dues from all steamboats which should moor or land in any part of the port of New Orleans. It was held on the state of the evidence in that case that since the ordinance applied to vessels landing anywhere within the city limits, and the fees were by the terms of the ordinance collectible from vessels which landed at any point on the banks of the river, without regard to the existence of wharves, the dues claimed could not be supported as a compensation for the use of the city's wharves, but that they constituted a tax upon every vessel which stopped, either by landing or mooring, in the waters of the Mississippi River within the city of New Orleans, for the privilege of so landing or mooring. It was there stated: "Whatever more general or more limited view may be entertained of the

true meaning of this clause [that no state shall, without the consent of congress, lay any duty of tonnage], it is perfectly clear that a duty or tax or burden imposed under the authority of the state, which is, by the law imposing it, to be measured by the capacity of the vessel, and is in its essence a contribution claimed for the privilege of arriving and departing from a port of the United States, is within the prohibition.'' The defendants herein contend that the charge imposed by the ordinance is in its essence a contribution for the privilege merely of stopping in the plaintiff's harbor.

█ We may take judicial knowledge of the fact that vessels engaged in commerce are not accustomed to stop or land in the harbor of the City of Oakland except at a wharf or pier or similar accommodation, and the effect of the present ordinance must necessarily be to collect the charge imposed from such vessel which lands or moors in the harbor of the City of Oakland, whether at the plaintiff's or some other wharf, or dock, or pier. █ It is conceded that the plaintiff may exact a wharfage or dockage fee from all who elect to stop at its wharves. But it appears to be settled that such a charge may be imposed only in its proprietary as distinguished from its sovereign capacity. When it becomes an imposition by virtue of sovereignty alone, i. e., where the limits of the imposition are not co-extensive with the bounds of its proprietary capacity, it then becomes a tax in violation of the Constitution. It is stated in *Packet Co.* v. *Keokuk*, 95 U. S. 80, at pages 84 and 85 [24 L. Ed. 377] : ''But a charge for services rendered or for conveniences provided is in no sense a tax or duty. It is not a hindrance or impediment to free navigation. The prohibition to the state against the imposition of a duty of tonnage was designed to guard against local hindrances to trade and carriage by vessels, not to relieve them from liability to claims for assistance rendered and facilities furnished for trade and commerce. It is a tax or a duty that is prohibited; something imposed by virtue of sovereignty, not claimed in right of proprietorship. Wharfage is of the latter character. Providing a wharf to which vessels may make fast, or at which they may conveniently load or unload, is rendering them a service. The character of the service is the same whether the wharf is

built and offered for use by a state, a municipal corporation, or a private individual, and when compensation is demanded for the use of the wharf, the demand is an assertion not of sovereignty, but of a right of property. A passing vessel may use the wharf or not, at its election, and thus may incur liability or not, at the choice of the master or owner." All of the cases cited by counsel and which independent research has discovered so limit and define the right of the state or municipality to collect wharfage and dockage fees. Other cases of the nature defined by *Cannon* v. *New Orleans* are cited and reviewed in *Packet Co.* v. *Keokuk, supra.* (See, also, *Inman Steamship Co.* v. *Tinker,* 94 U. S. 238 [24 L. Ed. 118].) Any imposition of such a charge on all vessels which land in the harbor, irrespective of whether they use the facilities and services furnished by the municipality when there may exist an election to do otherwise, must be held to be an impost on navigation and therefore unconstitutional. The fact that they land at some wharf within the harbor is not sufficient. The charge may only be exacted in exchange for facilities or services belonging to or furnished by the municipality imposing the charge. We can see no escape from the conclusion that the present ordinance requiring every vessel to land at the city's wharves, or, upon paying the same charge, be entitled to a permit to land at some other wharf in the city, is not a charge, as to vessels so landing elsewhere, for facilities or services furnished by the city. As to such vessels the exaction must be deemed to be a charge for the privilege merely of stopping in the plaintiff's harbor and, as such, constitutes a restriction on free commerce and navigation in violation of the constitutional prohibition.

The plaintiff relies on *City of Dubuque* v. *Stout,* 32 Iowa, 80 [7 Am. Rep. 171], as authority for the rule that legislation will be considered valid which provides that vessels may be permitted to land elsewhere on payment of the same wharfage fees. But in that case there was no question of a tax. All of the charges were for use of the city's facilities, and the ordinance provided that boats other than steamships might use other city landing places than the places specially designated upon permission of the harbor master, who might grant such permission on payment of

the same wharfage dues. The regulation was obviously based upon the necessity for proper policing and protection.

▮ The plaintiff attempts to justify the present ordinance as a valid exercise of its police power in the regulation and control of the harbor of the City of Oakland. It contends that the authorities establish the power of the municipality to "monopolize its waterfront, and require all vessels to land at its wharves and landing and pay wharfage" (28 Cyc. 923); to prescribe "the rates of wharfage on wharves owned by the state or by the municipality, or by private parties, or prescribing a penalty for landing at a place other than a government wharf" (12 C. J. 117); that "a city may designate the proper landing places and prohibit the use of others" (*Cincinnati etc. Packet Co.* v. *Catlettsburg*, 105 U. S. 559 [26 L. Ed. 1169]; that a "city may regulate the construction, maintenance and use of landing places, docks and piers within the corporate limits, and require all vessels to land at its wharves" (44 C. J. 1093). The plaintiff also relies on *City of Dubuque* v. *Stout*, 32 Iowa, 80 [7 Am. Rep. 171], *City of Dubuque* v. *Stout*, 32 Iowa, 47, and *City of Keokuk* v. *Keokuk Northern Line Packet Co.*, 45 Iowa, 196, as establishing the power of the municipality as a police regulation to compel all vessels to land at the public wharves maintained by it.

There can be no question of the correctness of the statements from the foregoing texts as applied to the facts in the cases cited in support thereof. All of those and similar cases relied upon by the plaintiff involve the exercise of the police power in the protection of the banks of such rivers as the Mississippi or the Ohio, and in none of them does it appear that any wharves existed except those maintained by the municipality. It does appear, however, in some of those cases that large steamers, in order to escape payment of wharfage and dockage charges, persisted in landing along the banks of the river to the great detriment thereof. A pertinent statement in *Packet Co.* v. *Catlettsburg, supra,* page 562, may be said to be the basis of the decision in all of those cases, viz.: "There can be no doubt that the rules which govern the landing and departure of vessels at points situated on navigable waters may seriously affect them in their business of navigation and transportation, and in some sense such rules are regulations of commerce. On the other hand, the necessity is obvious of the

existence in each port, where vessels as large as steamboats land at the shore and deposit their cargoes on the banks of navigable streams, of some authority to prescribe the places where this may be done, the time of doing it, and the points at which they may discharge cargo, both as relates to the streets, shores, houses of the town, and other vessels landing at the same time. The protection of the shore of the sea or bank of a river on which a town is situated is a necessity to the town, and the washing and crumbling of the bank from the agitation of the waters, made by the landing of large steamers, demand that such regulations should exist.'' The power claimed by the plaintiff to exist in municipalities to monopolize their harbors and require all vessels to land at the public wharves maintained by the city would seem to be upheld by language appearing in the case of *Dubuque* v. *Stout, supra,* but in *City of Keokuk* v. *Keokuk Northern Line Packet Co., supra,* that result is shown to depend on the valid exercise of the police power. In the latter case it was stated: ''In the exercise of their police powers the cities of the state may control the landings of boats, designating the place they shall receive or discharge freight and passengers. It is within their power to require this to be done at these wharves and to charge reasonable compensation therefor. (*City of Dubuque* v. *Stout, supra.*) This doctrine is founded upon the clearest reason, well understood by all persons familiar with the transaction of business upon the Mississippi river. . . . We have seen that cities may build wharves and charge for their use a sum that would be a just compensation. Now unless they have power to compel vessels to land at the wharves, the masters of vessels, in order to escape payment of wharfage fees, may discharge and receive cargoes on the natural banks of the river, to the inconvenience and loss of shippers and consignees. This power is necessary to enable the cities to exercise their police authority in providing places for the landing of vessels. It has never been doubted that the police power of the state, exercised through the municipal corporations, may regulate in this way transactions connected with commerce. We will not be expected to cite authorities in support of a doctrine so familiar. It is fully recognized in the case which we now proceed to consider,'' and the opinion then proceeds to a discussion of

*Cannon* v. *New Orleans, supra.* There is not in the present case even the semblance of an attempt to show the existence of any facts which would justify the ordinance as an exercise of the police power. With respect to the section of the ordinance under consideration, there is no police regulation to be enforced by the harbor manager. He has no discretion in granting or refusing the permit, but he must grant the same on payment of the required charges. This plainly characterizes the charge as a tax.

Inasmuch as none of the complaints seeks to recover for charges which may properly be imposed by the city for services rendered at its wharves or for facilities furnished by it, the demurrers were properly sustained.

The judgment in each of the cases consolidated is therefore affirmed.