[Civ. No. 25463.   Second Dist., Div. Three.   May 8, 1962.]

A. J. SHERWOOD, as Trustee, etc., Plaintiff and Appellant, v. COUNTY OF LOS ANGELES, Defendant and Respondent.

John Amos Fleming and Theodore R. Gabrielson for Plaintiff and Appellant.

Harold W. Kennedy, County Counsel, and Lloyd S. Davis, Deputy County Counsel, for Defendant and Respondent.

FORD, J.—This is an appeal from a judgment of dismissal entered after the defendant's demurrer to the first amended complaint had been sustained without leave to amend.[1]

A résumé of the plaintiff's first amended complaint is as follows: 1. From about 1938 until its dissolution in November 1959, Lakewood Water and Power Company was engaged in business in Los Angeles County as a public utility. On or about November 11, 1959, the corporation and its stockholders assigned to the plaintiff, as trustee, certain assets of the corporation, one of which was its claim against the defendant County of Los Angeles upon which the present action is based. 2. On or about January 30, 1959, the county made written application to the public utility for water service in a described area in the city of Lakewood. Thereafter the public utility proceeded to supply water to the county through its water main extension in that area. 3. As required by the Public Utilities Commission, the public utility adopted its rule No. 19, which was in compliance with the Water Main Extension Rules of the commission. Thereunder it was provided that where it was necessary to make certain main extensions so that an applicant could be served, such applicant should be required to advance to the utility before the commencement of construction the estimated reasonable cost of the installation of such mains. Any facilities so installed were the sole property of the utility. Provision was made for the adjustment of any difference between the estimated cost and the reasonable actual cost of the main extension after the actual cost of the installation had been ascertained by the utility. The money so advanced was subject to refund by the utility pursuant to certain formulae set forth in the rule. 4. "During 1957 and 1958 the defendant . . . County of Los Angeles and the incorporated City of Lakewood, constructed

---

[1]The grounds of demurrer stated were that "the first amended complaint fails to allege facts sufficient to constitute a cause of action" and that "the first amended complaint is barred by the provisions of subdivision 1 of Section 339 of the Code of Civil Procedure." The portion of section 339 to which reference was made is in part as follows: "Within two years: 1. An action upon a contract, obligation or liability not founded upon an instrument of writing. . . ."

a City Hall, Sheriff's Station and jail and a Health Department and Library Buildings, which now constitute the area known as the 'Civic Center' in said City of Lakewood ... [I]n order to serve water to said structures in said Civic Center the plaintiff's assignor, a public utility, was obliged to and did extend its nearest water main from the point nearest said Civic Center to said buildings so erected . . . in said Civic Center, and on or about January 27 [sic], 1959 the defendant county did in writing . . . apply to plaintiff's assignor for water service to its public buildings and facilities in said Civic Center and the plaintiff's assignor as a public utility accepted said application and thereafter served water to said buildings for the account of the defendant county pursuant to said application . . . until March 26, 1960, when the water plant and system of plaintiff's assignor located within the City of Lakewood was sold and transferred to said city.'' The amount due from defendant ''as of on or about January 30, 1959,'' is $9,796.70, no part of which was advanced by the defendant county ''as required by Rule 19.'' 5. On or about January 27, 1960, the plaintiff presented his claim for the amount due and unpaid to the board of supervisors of the county, which claim was denied on or about February 16, 1960. That claim (which, by stipulation, was deemed to be an exhibit to the complaint) contained statements which were in part as follows: ''On July 19, 1957, the County, through the office of its Chief Engineer presented to said Utility . . . the plot-plan of certain improvements then being considered by the County to its property [in Lakewood] . . . and asking if a water service connection with the Company's 8″ main located on the west side of Clark Avenue could be made. The utility advised the county such a water service connection could not be made and . . . that a 12″ main along the east side of Clark Avenue . . . would be necessary to assure an adequate water supply to the so-called 'Civic Center' area . . . and that under said Rule 19 of said Utility it was estimated that approximately $17,000.00 would be required of the County and the City of Lakewood to cover their proportionate shares of the cost of installing such main. Thereupon the County requested further information as to the estimated amount of its part of such cost, and on August 1, 1957, was informed by said Utility that it was estimated that the County's part of such cost would be $8,768.00 based on front-footage. That the 12″ main was thereafter installed for said Utility by an independent contractor and turned over to said Utility com-

pany in December 1957. . . . On December 30, 1957, the County in writing again notified said Utility it was going to need water service at a future date in the Lakewood Civic Center but that all charges for installation of a 3″ domestic and 4″ detector check meter, as well as for water used during construction were to be paid by Secrest Fish, Inc., [*sic*] the general contractor for the County, or his plumbing subcontractors, and that all bills for such water used after the construction of county buildings in Lakewood Center was completed, should be sent . . . for payment to the County. . . . On January 10, 1958, said Secrest & Fish, Inc., . . . applied, pursuant to said Utility's rules and regulations, as a contractor, for temporary water service for use in such construction. . . . Claimant is informed and believes and therefore alleges that on December 18, 1958, said Utility . . . informed the County that . . . [there was] a balance (incorrectly stated) due under its Rule 19 from the County to said Utility which under said rule was due to be paid by the County to the Utility before or upon any connection with said 12″ water main extension, or before or on the initiation of service of water to the County through said main extension. On said Utility's own printed form of application for water service, dated January 30, 1959, the County made its first and only application to said Utility for water service; the said Utility having theretofore made the necessary connections with said 12″ water main in order to serve said contractor, Secrest & Fish, Inc., then proceeded to begin to supply and thereafter until March 26, 1959, supplied the County with water through said water main extension. On March 26, 1959, said Utility sold its water system including said 12″ water main extension to the City of Lakewood, the water department of which city has ever since served and now serves water to said county through said water main extension.'' 6. ''The plaintiff as such trustee has the power and financial ability to make and will make any and all refunds of money to which the defendant may now be entitled or may hereafter become entitled under the provisions of Rule 19 of plaintiff's assignor, the provisions of which are identical with the provisions set forth in C(2) (b) of Appendix B of the Order . . . of the Public Utilities Commission. . . .''[2]

---

[2] As shown in Exhibit A attached to the first amended complaint, such provisions as set forth by the commission are:

''The money so advanced will be subject to refund by the utility without interest to the party or parties entitled thereto. The total

On this appeal no question is raised as to the propriety of considering the statements of fact contained in the claim filed with the county as being part of the allegations of the complaint. (See *Holly Sugar Corp.* v. *Johnson,* 18 Cal.2d 218, 225-226 [115 P.2d 8] ; 1 Chadbourn, Grossman & Van Alstyne, California Pleading, §§ 836-839.)[3]

Although it was directed primarily to the question of the applicability of the statute of limitations under the facts, the following statement of the appellant in his opening brief sets forth his position: ". . . under said Rule 19 all the utility had was a right or privilege to demand a deposit in advance of the estimated cost before beginning construction. The pleading and formal claim show that said right or privilege was not exercised and the utility extended the water main, completing it in December, 1957. The county had no liability at that point. The county then contracted with an independent contractor to construct the buildings and he contracted for his own water at his own expense on a temporary service construction contract as permitted by the rules of all water utilities. Obviously the county during construction and after construction and until January 30, 1959, when it formally applied for water service, could have at any time without any liability to the utility under Rule 19, (1) ceased construction and abandoned the project; (2) transferred the land, construction and facilities to the state, City of Lakewood or any other public agency or even a private party. . . . This liability of the defendant county to the utility did not arise or accrue until January 30, 1959, when the county in writing contracted for water service through this extended main."

amount so refunded shall not exceed the amount advanced. Refunds may be made under either of the following methods at the option of the utility:

(a) . . . . . . . . . . . .
(b) Percentage of Revenue Method* The utility will refund 22% of the estimated annual revenue from each bona fide customer, exclusive of any customer formerly served at the same location, connected directly to the extension for which the cost was advanced. *The refund will, at the election of the utility, be made in annual, semiannual or quarterly payments and for a period of 20 years.*

[3]In his opening brief the appellant states: "Plaintiff's formal claim to defendant county . . . sets forth in evidentiary style all of the facts, data and details of the conduct, correspondence and dealings of the parties in chronological order."

*The utility may, at its option, in its filing insert a higher refund percentage, so as to refund a greater percentage of the estimated annual revenues over a shorter period than set forth herein; provided, however, that in so doing the percentage times years equals 4.4."

■ Pertinent rules and regulations which the Public Utilities Commission requires a public utility to adopt and file with the commission automatically become an implied term of any contract made between that public utility and its customer. (*Hischemoeller* v. *National Ice etc. Storage Co.*, 46 Cal.2d 318, 325 [294 P.2d 433]; *Gardner* v. *Basich Bros. Constr. Co.*, 44 Cal.2d 191, 193-194 [281 P.2d 521]; *Cole* v. *Pacific Tel. & Tel. Co.*, 112 Cal.App.2d 416, 418 [246 P.2d 686].) ■ Any claim of liability asserted against the customer must find support in the terms, express or implied, of that contract. Thus, with respect to certain rates fixed by law, it was said in *Church* v. *Public Utilities Com.*, 51 Cal.2d 399 [333 P.2d 321], at page 401: ''The law, however, does not create the liability. It only determines the amount of the liability created by the agreement of the parties.'' (See also *Gardner* v. *Basich Bros. Constr. Co., supra*, 44 Cal.2d 191, 194.)

■ The appellant has conceded that there was no liability on the part of the county before it entered into the contract of January 30, 1959. But as of that date the main extension had been completed and in existence for over a year. Consequently, the provisions of rule 19 as embodied in the contract of January 30, 1959, were not applicable to the factual situation existing on that date. The mere fact that the defendant county may have benefited by the lack of caution on the part of the utility in failing to have a contractual relationship with the county prior to the extension of its main is not alone sufficient to give rise to liability. (See *Fursdon* v. *County of Los Angeles*, 100 Cal.App.2d Supp. 845, 847 [223 P.2d 520]; *Hart Bros. Co.* v. *County of Los Angeles*, 31 Cal.App.2d Supp. 766, 768 [82 P.2d 221].) Consequently, the appellant can derive no aid from his argument that the county will be unjustly enriched if recovery is denied in this case.[4] Furthermore, payment to the appellant would not inure to the benefit of any of the other customers receiving service from the present owner of the water system and, accordingly, no injustice to such customers is involved.

As has been noted, if the county had to pay a share of the reasonable cost of the main extension, it would be entitled to a refund of at least a part thereof over a period of time under the provisions of rule 19. But, in view of the determination

[4]In passing, it should be noted that the plaintiff makes no claim that the utility did not receive payment for the main extension herein involved as part of its system which it sold to the City of Lakewood.

herein expressed as to the lack of such liability, we need not consider the problem of the effect, with respect to such provisions of rule 19, of the transfer of the system to the City of Lakewood and the dissolution of the utility. It is likewise unnecessary to consider either the merit of the second ground of the demurrer which was founded on the statute of limitations or the contention of the appellant that the county is estopped to assert that statute.

The judgment is affirmed.

Shinn, P. J., and Files, J., concurred.