[Civ. No. 12080. Third Dist. Mar. 31, 1970.]

ARCADE COUNTY WATER DISTRICT, Plaintiff and Appellant, v. ARCADE FIRE DISTRICT et al., Defendants and Respondents.

DEL PASO MANOR COUNTY WATER DISTRICT, Plaintiff and Appellant, v. ARCADE FIRE DISTRICT et al., Defendants and Respondents.

(Consolidated Cases.)

## COUNSEL

William T. Sweigert, Lancaster & Yorton, David M. Yorton, McDonough, Holland, Schwartz, Allen & Wahrhaftig, Martin McDonough and Elmer R. Malakoff for Plaintiffs and Appellants.

John B. Heinrich, County Counsel, Diepenbrock, Wulff, Plant & Hannegan, James Diepenbrock and Vigfus Asmundson for Defendants and Respondents.

---

**OPINION**

**BRAY, J.**[*]—Plaintiffs appeal from judgment in seven actions consolidated for trial and appeal, denying them charges for furnishing water to defendant fire districts' fire hydrants.

### QUESTION PRESENTED

Are the fire districts liable for water charges in implied or quasi-contract after express rejection of liability?

### RECORD

Plaintiffs are two county water districts organized under the County Water District Law (Wat. Code, § 30000 et seq.). The five defendants are fire districts organized under the Fire Protection District Law of 1961 (Health & Saf. Code, § 13801 et seq.). Plaintiff Arcade sued all five defendants; plaintiff Del Paso Manor sued defendants Arcade Fire District and Arden Fire District to recover charges for hydrant services. As the actions were consolidated for trial, a single judgment was entered and a single appeal filed. Plaintiffs contend that the evidence shows either a "contract implied-in-fact" or grounds for quasi-contractual recovery. The trial court found adversely to this contention.[1]

### FACTS

· There is no dispute as to the facts. Originally, water was supplied to the fire districts' hydrants by the Ben Ali Water Company and the Del Paso Water Company. At first the fire districts refused to pay the water companies for water service but a compromise agreement was entered into to "buy peace" by paying 75 cents per month per hydrant without admitting

---

[*]Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]The trial was bifurcated, the issue of liability only being tried; the issue of damages to follow if liability was established. Hence, no question of the reasonableness of the hydrant charge is to be determined on this appeal.

It is interesting to note that a judge other than the one who tried the case overruled the fire districts' demurrers, holding that "absent an express contract between a county water district and a fire district, nevertheless, it would seem that the fire district is liable on an implied contractual basis for the reasonable value of the service provided by the county water district."

liability. Some fire districts reduced this agreement to writing, others honored it informally, or simply went along with the rest. When the water companies were succeeded by the water districts, the fire districts continued to pay this same charge. This continued from 1956 or 1957 to 1963. A service study made by the Sacramento Area Water Works Association showed that the cost to the water districts of service was $4 per month per hydrant, so in June 1963 plaintiff water districts, without the consent, approval or knowledge of defendants, adopted ordinances setting a rate of $4 per month per hydrant and then billed and continued to bill the fire districts at that rate.

Defendants notified plaintiffs that they would not pay such a charge and immediately stopped paying the 75 cents per month they had been paying. They have continued refusing to pay, accepting the water and hydrant services without charge.

Plaintiffs have at all times delivered water to the fire districts' hydrants for fire protection purposes, without any specific request from the fire districts, and the latter have at all times used water from the hydrants as needed to fight fires. The hydrants are all located within the plaintiff districts seeking compensation and within the fire districts sought to be charged and are owned and controlled by the water districts. Some parts of defendant fire districts are within the boundaries of other county water districts.

## LIABILITY

There appears to be no legislation expressly requiring county water districts to supply water to fire districts by hydrants nor expressly providing payment for water supplied thereto. Nor is there any legislation expressly requiring fire districts to take water from the county water districts nor to pay for such water when supplied.[2]

An "implied-in-law" contract is actually not a contract at all, but merely an obligation imposed by the law to bring about justice. It has been held that a contract may be formed even though there is no "meeting of the minds." The so-called "implied-in-fact" contract, however, is a true contract despite the possible absence of a simultaneous "meeting of the minds."[3]

[2]It is conceded that the California Public Utilities Commission has no jurisdiction over these county water districts.

[3]See *Desny* v. *Wilder* (1956) 46 Cal.2d 715, 734-737 [299 P.2d 257], where the court quotes with approval the following example from Williston, *Mutual Assent in the Formation of Contracts*, 14 Illinois Law Review 85, 90: "'The parties may be bound by the terms of an offer even though the offeree expressly indicated dis-

■ Defendants in the instant case effectually stated to plaintiffs, "We decline to pay the rates you ask, but must take your hydrant service." While their words denied an immediate acceptance, the actions of the parties can be viewed as demonstrating an intention to continue negotiations. Not only did defendants actually use water from plaintiffs' hydrants when fires occurred, but they were also relying between fires on the existence of the hydrant service. Plaintiffs' continued billings are sufficient to show that the hydrant service was not intended as a gift.

Defendants rely on *Tuolumne County Electric Power & Light Co.* v. *City of Sonora* (1916) 31 Cal.App. 655 [161 P. 128], where the court held that the power company could not recover from the city for electricity consumed by the city's street lights during the daytime. The court held that there was no implied-in-fact contract because the city had instructed the power company not to deliver electricity during the daytime. That case differs from ours in two important respects. First, the city did not perform an affirmative act of taking the electricity after its verbal rejection, contrary to defendants' acts here of continuing to take water after their verbal rejection. In that case the city could have avoided receiving the unwanted electricity only by paying for expensive switches or by also rejecting electricity for nighttime street lighting, a benefit to which it was entitled by contract. Second, in that case the city received no benefit from the daytime electricity, making it unreasonable to infer assent from the act of acceptance. In our case defendants' acceptance of the benefit of continued hydrant service makes it reasonable to say that their actions speak louder than their words.

*Sherwood* v. *County of Los Angeles* (1962) 203 Cal.App.2d 354 [21 Cal.Rptr. 810], is not in point. There the Lakewood Water and Power Company, a public utility, had adopted a rule required by the Public Utilities Commission that where it was necessary to make certain main extensions to its water lines so that an applicant could be served, such applicant should be required to advance to the utility before the commencement of construction the estimated reasonable cost of the installation of such mains. The money so advanced was subject to refund by the utility from payments thereafter to be made by the applicant for water. The water company, in anticipation of water to be used in a "Civic Center" to be constructed by the county and the City of Lakewood, extended its main to supply water thereto without application for water by the county or

sent, provided his action could only lawfully mean assent. A buyer who goes into a shop and asks and is given [told] the price of an article, cannot take it and say "I decline to pay the price you ask, but will take it at its fair value." He will be liable, if the seller elects to hold him so liable, not simply as a converter for the fair value of the property, but as a buyer for the stated price.' "

demand by the water company of the cost of such extension. During the construction of the buildings at the center, the contractor erecting the buildings applied for and received water from such extension for which he paid. On completion of the buildings the company applied for and received water service. The successor in interest of the water company sued the county for the cost of the extension. The court denied recovery on the ground that the utility had constructed the extension prior to any request by the county for water, and hence no contract either express or implied existed between the utility and the county. Moreover, the court held that the mere fact that the county may have benefited by the lack of caution of the utility in failing to have a contractual relationship with the county prior to the extension of its main is not alone sufficient to give rise to liability. In the instant case, differing from the situation in Sherwood, the water districts in supplying water to the fire districts notified them that it was being supplied in expectation of compensation.

■ Nor is this arrangement lacking in mutuality as defendants contend. Although the ordinances do not bind plaintiffs to furnish hydrant service for any period of time, they are offers to furnish hydrant service for all months for which defendants offer payment.

■ Moreover, the past dealings between the parties, in which the fire districts were paying the hydrant charges, and the rejection of the new rates, together with the continued use of hydrant service, indicate an implied agreement to pay not the demanded price but a reasonable price. (See 1 Corbin on Contracts, § 99, p. 444.)

■ Defendants relying on *People* ex rel. *City of Downey* v. *Downey County Water Dist.* (1962) 202 Cal.App.2d 786 [21 Cal.Rptr. 370], contend that county water districts are not municipalities and have only limited powers, and that as there is no legislative act which specifically authorizes such districts to charge fire districts for hydrant service the water districts are required to supply such service free. However, issue was taken with *Downey* in *Glenbrook Dev. Co.* v. *City of Brea* (1967) 253 Cal.App.2d 267, 277 [61 Cal.Rptr. 189], where it was pointed out "there is substantial decisional law to the effect that a county water district has the mandatory duty of furnishing water to inhabitants within the district's boundaries, and where a district is supplying water, it does so pursuant to the authority granted to it under the Constitution as well as legislative fiat. (*Coachella Valley County Water Dist.* v. *Stevens, supra,* 206 Cal. 400, 406-407.) It inevitably follows, therefore, that a county water district must be regarded as a 'municipal corporation' within the meaning of article XI, section 19, of the California Constitution inasmuch as its functions are practically identical in nature and purpose with those exercised by a

municipal water district, and inasmuch as both types of districts were created for the primary purpose of supplying water to parcels of land situated within their respective boundaries." That a county water district is under no obligation to supply free water service to a fire district is clearly shown by section 31048 of the Water Code which expressly gives such district the power to contract with public agencies for the distribution of water for "protection of property." Here is a legislative fiat, if one is needed. Section 13852, subdivision (g), of the Health and Safety Code gives the fire districts the power to contract "for the supply and distribution of water where necessary for the purposes of fire protection . . . ."

In *Royal Oaks Water Co.* (1958) 56 Cal.P.U.C. 580, the commission held that "the organized fire protection agency should pay for the service rendered to it, the benefits of which are extended to the property owners in the area." Defendants dismiss this decision as not being in point, because, they say, defendants have not requested any fire protection service. Paying for such service over a considerable period of time, and continuing to accept it is, in effect, an implied request for it.

The inequity of requiring the water districts to supply free water to the fire districts is shown by the fact that some of the fire districts are not coterminous with the particular water district. Thus, as quoted by Judge Irving H. Perluss in his memoranum opinion overruling the demurrers to the complaints from "Water District Organization," A Report of the Assembly Interim Committee on Water to the California Legislature (vol. 26, no. 14, p. 25 (Jan. 1965)) "the area receiving the benefits of fire protection facilities may not pay their fair share of the cost through the financing water district. Second, most water districts pay for their water service out of water revenue, that is, water charges, whereas almost all fire agencies are financed by direct tax on assessed valuation. The amount of water used by a home or business frequently bears no relation to the value of the property receiving the fire protection. Consequently, if additional fire protection costs were allocated through additional water rate charges, a burden would be placed upon the water users of public water districts which in no way would be commensurate to the benefits received."

Section 31048 gives the water district broad powers, including the right to contract with public agencies for the distribution of water for many purposes, including "protection of property."

"While the use of water required for the purpose of any district is a public use (Wat. Code, § 31043), the district may establish rules and regulations for the sale, distribution and use of water in the district (Wat. Code, § 31024). It must be presumed that the district adopted reasonable rules and regulations as to supplying water to petitioners and to others

within the district." (*Moore* v. *Twentynine Palms etc. Water Dist.* (1957) 156 Cal.App.2d 109 [318 P.2d 751].) █ Section 31025 provides that the district shall fix the water rates. Thus, the presumption of reasonableness applies to the rates so fixed.

Defendants in their answers have charged that the rate fixed by the district, $4 per month per hydrant, is unreasonable, excessive and arbitrary. █ Section 31007 of the Water Code provides the criteria for fixing the rates, and presumptively these criteria have been followed by the districts. However, in view of the allegations in the answers, it will be necessary for the trial court to proceed with the issue of the reasonableness of the rates, the determination of which by stipulation was to await the outcome of this appeal.

Defendants' characterization of plaintiffs' charges as a "tax" is unfounded. █ A charge for services rendered is in no sense a tax (see *City of Oakland* v. *E. K. Wood Lumber Co.* (1930) 211 Cal. 16, 25 [292 P. 1076, 80 A.L.R. 379]). The defendant fire districts are liable to the water districts for the services supplied.

The judgment is reversed and the cause remanded to the superior court for further proceedings as herein stated.

Pierce, P. J., and Regan, J., concurred.

A petition for a rehearing was denied April 21, 1970, and respondents' petition for a hearing by the Supreme Court was denied May 28, 1970.