## No. C-645

**Alameda Water and Sanitation District v. Bancroft Fire Protection District**

(544 P.2d 979)

Decided January 26, 1976.

Robinson-Robinson, P.C., William Hedges Robinson, Jr., for petitioner.

Myers, Woodford & Hoppin, L. Thomas Woodford, for respondent.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

Petitioner, Alameda Water and Sanitation District, seeks to reverse a judgment of the Court of Appeals[1] which held that it is obligated to supply water and repair and maintain fire hydrants for the respondent, Bancroft Fire Protection District, without charge. We granted certiorari and we now affirm.

Both parties are quasi-municipal corporations of the State of Colorado. Alameda was originally organized in 1952 as a water and sanitation district. In 1960, it became a metropolitan district. Bancroft was organized in 1947 as a fire protection district. Alameda is composed of several small, non-contiguous areas and, except for one small portion, is contained within the boundaries of Bancroft. Alameda has been repairing fire hydrants and furnishing water within areas of Alameda and Bancroft which overlap, but without acknowledging any responsibility for such repairs and service. Alameda demanded that Bancroft pay for these services. Bancroft refused whereupon Alameda brought this declaratory judgment action. It is important to re-emphasize that Alameda has been extending services without charge only in areas that are within the Alameda boundaries.

I.

At the time Alameda was organized in 1952, its duties were set forth in C.R.S. 1963, 89-5-2(1):

"A 'water district' is one to supply water for domestic purposes by any available means, and for that purpose any such district shall have power to

---

[1] *Alameda Water and Sanitation District v. Bancroft Fire Protection District,* 35 Colo.App. 192, 532 P.2d 60.

extend its water lines to the sources of water supply outside the district."
When Alameda became a metropolitan district in 1960, its water and sanitation duties remained the same.

In 1969, the duties of a metropolitan district were changed to read as follows:

"A water district is one to supply water for *fire*, domestic, and other public and private purposes by any available means, and to provide all necessary or proper equipment and appurtenances thereto." (emphasis added) 1969 Perm. Supp., C.R.S. 1963, 89-3-2(1).

We believe that the statutory change evinced a clear legislative intent that water districts be responsible both for supplying water for fire protection and, concomitantly, the repair and maintenance of "necessary equipment," *i.e.*, fire hydrants, "incident thereto." We, therefore, view the reasoning expressed in *Valley Water District v. Littleton,* 32 Colo.App. 286, 512 P.2d 644 (1973) as applicable.

In *Valley Water* the Court of Appeals noted that the water district was responsible for supplying water and maintaining fire hydrants for fire protection and that the City of Littleton was not obligated to pay for those services since "Valley was discharging its own obligation and not one imposed by law upon Littleton." 32 Colo.App. at 289, 512 P.2d at 646. Similarly here, Alameda, by supplying water and maintaining fire hydrants within its own boundaries is discharging its duty as established by the legislature. *See, Schlarb v. North Suburban Sanitation District,* 144 Colo. 590, 357 P.2d 647 (1960).

Alameda contends that *Arcade County Water District v. Arcade Fire District,* 6 Cal.App.3d 232, 85 Cal.Rptr. 737 (1970), correctly held that a fire district is obligated to pay a water district for water and fire hydrant services and should be followed in this regard. *Arcade County* is, however, distinguishable in significant respects from the instant case. First, the California Court of Appeals noted that "(t)here appears to be no legislation expressly requiring county water districts to supply water to fire districts by hydrants . . ." 6 Cal.App.3d at 236, 85 Cal.Rptr. at 739. As noted above, the Colorado statutes, since 1969 at least, do require a water district such as Alameda to provide water for fire protection. Second, the court in *Arcade County* held the fire district liable under a theory of an implied-in-fact contract, referring throughout the opinion to the past contractual dealings between the parties whereby the fire district had paid the water district until the water district decided to raise the rate to a sum unacceptable to the fire district. In the instant case the history is just the opposite. We, therefore, choose not to follow the result reached in *Arcade County.*

## II.

Alameda contends that an implied contract existed between Alameda and Bancroft which requires that Alameda be paid for the serv-

ices it provided to Bancroft. While we agree that quasi-municipal corporations such as Alameda and Bancroft *may* contract for services, *National Food Stores, Inc. v. North Washington Street Water and Sanitation District*, 163 Colo. 178, 429 P.2d 283 (1967), no such contract, either express or implied, exists between the parties in the instant case.

Alameda, in fact, concedes that no express contractual relationship existed between Alameda and Bancroft. Furthermore, the parties stipulated at the trial that the liability of either Alameda or Bancroft for the services provided was "solely statutory." The other points raised have no merit and are amply treated by the Court of Appeals.

The judgment is affirmed.