[No. B119775. Second Dist., Div. One. July 28, 1998.]

LOS ANGELES CELLULAR TELEPHONE COMPANY, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; MARCIA SPIELHOLZ, Real Party in Interest.

1014

## COUNSEL

Gibson, Dunn & Crutcher, James R. Martin, Steven E. Sletten, J. Andrew Chang, Robert H. Wright, Ford, Walker, Haggerty & Behar, Jeffrey S. Behar and Tina I. Mangarpan for Petitioner.

Bart Kimball, Thelen, Marrin, Johnson & Bridges, Helen J. Lauderdale and Jonathan H. Krotinger as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Hiepler & Hiepler, Mark O. Hiepler and James D. McGinley for Real Party in Interest.

Carl Hilliard as Amicus Curiae on behalf of Real Party in Interest.

## OPINION

**VOGEL (Miriam A.), J.**—Two men followed a woman. She tried to use her cell phone to reach 911 but could not get a connection. One of the men shot her. She sued her cellular service provider for damages, alleging negligence, fraud and false advertising. The cellular provider (a public utility) moved for summary adjudication of one of its affirmative defenses, pointing to a limitation of liability provision included in a tariff it had filed with the Public Utilities Commission and contending its maximum liability for negligence was $5,000. The motion was denied and the provider filed a petition. We grant the petition.

### BACKGROUND

As Marcia Spielholz was driving through the Beverlywood area of Los Angeles, she was confronted by two men who tried to stage an accident. She drove off, dialing 911 on her cellular telephone as she tried to get away. She could not secure a connection, and dialed again and again without success. The men followed in their car, first tailing her, then passing and pulling in front of her car, and ultimately forcing her to stop. One of the men shot her in the face, causing severe and permanent injuries.

Spielholz sued Los Angeles Cellular Telephone Company (the provider of her cellular telephone service) for damages, alleging that she had purchased her cellular telephone because she was concerned about her personal safety, and that she had selected L.A. Cellular as her service provider based on its representation that it offered the "broadest cellular coverage in Southern California," with a "direct line to 911." Spielholz's complaint includes a cause of action for negligence in which she alleges that L.A. Cellular knew its service did not operate well or at all in certain geographic locations and knew there had been an increase in violent crimes in Los Angeles, but nevertheless failed to warn its customers of these problems. Had Spielholz known of the problems, she "would not have driven her vehicle in these locations." She alleges that L.A. Cellular's negligence caused her injuries (because a completed call would have brought police cars and helicopters to the area and her attackers would have fled).[1]

■■ L.A. Cellular (a public utility regulated by the Public Utilities Commission) answered and later moved for summary adjudication of issues, contending its liability for negligence is limited to $5,000 by reason of a limitation of liability provision in a tariff it had previously filed with the PUC. ■■ (Code Civ. Proc., § 437c, subd. (f)(1) [a "party may move for summary adjudication as to . . . one or more affirmative defenses . . . . A motion for summary adjudication shall be granted . . . if it completely disposes of . . . an affirmative defense . . . ."].) As relevant, the limitation provides that L.A. Cellular's "liability to its customers for interruptions in the service furnished" by L.A. Cellular is limited to a credit allowance for the period of the interruption. ■■■■ "Because the precise cause and resulting damages from a missed or garbled telephone message are difficult to ascertain, and because the subscriber rather than [L.A. Cellular] is better placed to insure against such damages, the liability of [L.A. Cellular] shall be limited in the case of errors or omissions resulting from its own negligence to the sum of $500, and, in the event of gross negligence by [L.A. Cellular], to the sum of $5,000. . . ."[2]

Spielholz opposed the motion for summary adjudication, contending the limitation on liability is preempted by federal law and that it does not in any

---

[1]For reasons we do not understand, Spielholz's complaint includes a separate cause of action entitled "negligent infliction of emotional distress" (a cause of action generally limited to bystanders and other third parties). As the Supreme Court explained in *Marlene F.* v. *Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal.3d 583, 588 [257 Cal.Rptr. 98, 770 P.2d 278], negligent infliction of emotional distress is not an independent tort but simply the tort of negligence, with the traditional elements of duty, breach and causation. Our discussion of Spielholz's negligence claim therefore includes her causes of action for both simple negligence and negligent infliction of emotional distress.

[2]In its answer to Spielholz's complaint, L.A. Cellular raised the tariff limitation as an affirmative defense to all of Spielholz's claims. By its own terms, however, the "limitation of liability" filed with the PUC does "not apply to errors or omissions caused by willful

event apply to personal injury damages. ▇▇▇ ▬▬ The trial court accepted the preemption argument and denied L.A. Cellular's motion.[3] L.A. Cellular then filed a petition for a writ of mandate, asking us to direct the trial court to enforce the limitation. We issued an order to show cause, received further briefing, and set the matter for oral argument.[4]

## DISCUSSION

▇▇ L.A. Cellular contends the tariff's limitation on negligence liability is valid. We agree.

The PUC is specifically empowered to require a public utility to file tariff schedules containing the utility's rates, charges, classifications and conditions affecting service. (Pub. Util. Code, § 489.)[5] L.A. Cellular's tariff, including its limitation of liability, was filed with the PUC in 1989, at which time it became binding on the public, with the force and effect of a law. (*Dyke Water Co.* v. *Public Utilities Com.* (1961) 56 Cal.2d 105, 123 [14 Cal.Rptr. 310, 363 P.2d 326]; *Trammell* v. *Western Union Tel. Co.* (1976) 57 Cal.App.3d 538, 550-551 [129 Cal.Rptr. 361].)[6] Limitations on liability are properly included in tariffs as a subject clearly within the PUC's regulatory

misconduct, fraudulent conduct or violations of law." For this reason, Spielholz's causes of action for negligent misrepresentation, fraud, and false advertising are not before us at this time (*Continental Airlines, Inc.* v. *McDonnell Douglas Corp.* (1989) 216 Cal.App.3d 388, 403 [264 Cal.Rptr. 779] [negligent misrepresentation is a form of fraud]), and we therefore disregard the arguments directed at anything other than negligence.

[3]The trial court was simply mistaken when it concluded that federal law prohibits the PUC's regulation of the terms and conditions of L.A. Cellular's service to its customers. L.A. Cellular's limitation on liability is contained in a tariff that was filed with the PUC in 1989. In 1993, the Federal Communications Act of 1934 (47 U.S.C. § 332) was amended to include cellular service providers within some of its regulations, but the effective date of this amendment was postponed. Spielholz was shot in 1994. The preemption provision did not become effective until August 1995. (*In re Regulatory Authority Over Instrastate Cellular Service Rates* (1995) 11 F.C.C.R. 796).) In addition to the fact that there was no preemption at the time of the events relevant to this case, the amendment does not in any event affect the PUC's power to regulate the terms and conditions imposed by wireless service providers. (47 U.S.C. § 332(c)(3)(A) ["no State . . . shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services"].)

[4]L.A. Cellular's summary adjudication motion said its liability was further limited by a purchase agreement signed by Spielholz at the time she became a subscriber. The agreement submitted by L.A. Cellular was unsigned, and Spielholz claims she never signed such an agreement. For this reason, our decision is based entirely on the limitation of liability contained in the tariff.

[5]Undesignated section references are to the Public Utilities Code.

[6]In California, public utilities are controlled by both the Legislature (Cal. Const., art. XII, § 3) and the PUC (Cal. Const., art. XII, §§ 1-6; *San Diego Gas & Electric Co.* v. *Superior Court* (1996) 13 Cal.4th 893, 914-915 [55 Cal.Rptr.2d 724, 920 P.2d 669]). Specifically, the

powers. (*Waters* v. *Pacific Telephone Co.* (1974) 12 Cal.3d 1, 6-7 [114 Cal.Rptr. 753, 523 P.2d 1161] [the subject of limitations upon liability of telephone utilities has long been considered to be a proper subject for PUC regulation and supervision].) As our courts have long recognized, it is an equitable trade-off—the power to regulate rates and to set them below the amount an unregulated provider might otherwise charge requires a concomitant limitation on liability. (*Id.* at pp. 7-10; see also *Cole* v. *Pacific Tel. & Tel. Co.* (1952) 112 Cal.App.2d 416, 417-418 [246 P.2d 686]; *Colich & Sons* v. *Pacific Bell, supra,* 198 Cal.App.3d 1225; *Trammell* v. *Western Union Tel. Co., supra,* 57 Cal.App.3d 538.)[7]

We summarily dispose of Spielholz's remaining points. First, we reject her contention that the limitation on liability does not apply to personal injury damages. By its terms, L.A. Cellular's limitation of liability applies to negligence actions without regard to the nature of the damages sought. (Cf. *Ford* v. *Pacific Gas & Electric Co.* (1997) 60 Cal.App.4th 696, 704, 707 [70 Cal.Rptr.2d 359]; *Waters* v. *Pacific Telephone Co., supra,* 12 Cal.3d at p. 10 [courts are not permitted to "reinterpret the language" of PUC approved tariff schedules in the guise of judicial construction].) Second, we reject her contention that L.A. Cellular's limitation is "ambiguous." By its terms, the limitation applies to L.A. Cellular's "liability to its customers for interruptions in . . . service." By any reasonable interpretation, Spielholz's inability to obtain a connection to 911 was an "interruption in service." (*Id.* at p. 10, fn. 8 [the general rules requiring precision of expressions in the drafting of exculpatory clauses "seem inapplicable to the customers of a telephone utility" because the subscriber "ordinarily would not be motivated by the availability of damages" in the event of the service provider's negligence].)

---

PUC has the power to supervise, regulate and investigate the practices, facilities and services of public utilities. (§§ 489, 584, 702.) As a cellular telephone service provider, L.A. Cellular is subject to regulation by the PUC. (Cal. Const., art. XII, § 3; Pub. Util. Code, §§ 216, 234; *Re Regulation of Cellular Radiotelephone Utilities* (1989) 32 Cal.P.U.C.2d 271, 272.) A condition imposed by a tariff binds a utility's customers without regard to whether a contract is signed by the customer and without regard to the customer's actual knowledge of the tariff. (*Sherwood* v. *County of Los Angeles* (1962) 203 Cal.App.2d 354, 359 [21 Cal.Rptr. 810]; *Colich & Sons* v. *Pacific Bell* (1988) 198 Cal.App.3d 1225, 1234-1235 [244 Cal.Rptr. 714]; *Trammell* v. *Western Union Tel. Co., supra,* 57 Cal.App.3d at pp. 551-553; *Hischemoeller* v. *Nat. Ice etc. Storage Co.* (1956) 46 Cal.2d 318, 324-325 [294 P.2d 433].)

[7]Spielholz says we are not bound by the cases cited in the text because cellular service providers are not the same as wireline service providers. We agree that there are differences. We do not agree that those differences are relevant in this case. Here, as in the reported decisions, the point is that the PUC has authorized the service-providers' limitations on liability. (*Waters* v. *Pacific Telephone Co., supra,* 12 Cal.3d at p. 10 [the PUC "has approved a general policy of limiting the liability of telephone utilities for ordinary negligence to a specified credit allowance, and has relied upon the validity and effect of that policy in exercising its rate-making functions"].)

Third, we reject her contention that the limitation does not apply to her because, she says, she has alleged a "violation of law." As noted at the outset, L.A. Cellular's limitation does not apply to Spielholz's false advertising claim because it alleges a violation of law (Bus. & Prof. Code, § 17200). But it does apply to her negligence causes of action, where she alleges garden variety, common law negligence, without reference to any statute or law—in short, that L.A. Cellular, knowing there were some areas where its service "did not operate well," breached its duty by not warning Spielholz of those problems, as a result of which she was shot. No violation of law is alleged in the negligence causes of action. Fourth, we reject Spielholz's contention that an allegedly negligent failure to provide any service in the Beverlywood area somehow differs from an "interruption" in service. It is just another way of saying the same thing. (*Pacific Tel. & Tel. Co.* v. *Superior Court* (1963) 60 Cal.2d 426, 427 [34 Cal.Rptr. 673, 386 P.2d 233].)

For these reasons, the limitation on liability is binding on Spielholz and the most she can recover from L.A. Cellular for negligence is $5,000.

### DISPOSITION

Let a peremptory writ of mandate issue compelling the trial court to vacate its order denying L.A. Cellular's motion for summary adjudication of its affirmative defense (limitation of liability) to Spielholz's negligence claims (simple negligence and negligent infliction of emotional distress) and to enter a new order adjudicating the validity of L.A. Cellular's limitation of liability vis-à-vis those two causes of action, thereby limiting L.A. Cellular's maximum liability to $5,000 in the event it is found liable for negligence or gross negligence. The parties are to pay their own costs of these writ proceedings.

Ortega, Acting P. J., and Masterson, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied October 21, 1998.