Matthias, J.
 

 From the foregoing statement it is to be observed that but one question of law is presented by the demurrer to the petition and that is whether the ordinance in question falls within the requirements of Section 5625-33 (d), General Code. The pertinent provisions of this statute are as follows:
 

 “No subdivision or taxing unit shall * * * make any contract or give any order involving expenditure of money unless there is attached thereto a certificate of the fiscal officer of the subdivision that the amount required to meet the same (or in the case of a continuing contract to be performed in whole, or in part, in an ensuing fiscal year, the amount required to meet the same in the fiscal year in which the contract is'made), has been lawfully appropriated for such purposes and is in the treasury or in process of collection to the credit of an appropriate fund free from any previous encumbrances.”
 

 Our question, therefore, is whether the charge for water service at the specified rate is unenforceable against the city by reason of the want of such certificate by the fiscal officer of the city. It is conceded that no such certificate was made or filed.
 

 The ordinance in question in this case was one which involved primarily the fixing of rates. It is essentially a rate-making ordinance. It prescribes the rates for product and service for individual citizens and the city
 
 *462
 
 itself. Having reference particularly to the water used by the city through hydrants for fire and other purposes, the rate therefor is prescribed, and the sum to be paid for each hydrant installed and maintained upon direction of the city is fixed and specified. Hence, the obligation assumed by the city is to pay, at the times stated, for water furnished at the rate specified in the ordinance.
 

 The principle involved has heretofore been considered by this court in the case of
 
 Mutual Electric Co.
 
 v.
 
 Village of Pomeroy,
 
 99 Ohio St., 75, 124 N. E., 58. There the ordinance, the validity of which was challenged, was one fixing the rate or price which the Mutual Electric Light Company might charge for lighting the streets of the village of Pomeroy for a period not exceeding ten years. The terms of the ordinance were accepted in writing. Thereafter electric current was furnished for the purpose stated, but the village refused to pay in accordance with the rate specified, or any amount whatever. The defense to the action instituted to recover the amount due was that, notwithstanding a certain other company had a franchise in the village and was equipped to furnish electric current for street lighting purposes, there had been no advertisement for bids for public lighting. The specific question presented was whether the provisions of Section 4221, General Code, requiring advertisement for bids where contemplated expenditures exceeded five hundred dollars, applied to such ordinance. This court held that it did not, and announced in the syllabus that “Section 4221, General Code, has no application whatever to a contract between a municipality and a public utility, where the council of a municipality has the power to fix and regulate the price to be charged for such public utility.”
 

 Not only the decision of that case, but the reasoning of the court in reaching its conclusion are applicable here, for the ordinances in each case are evidently
 
 *463
 
 quite similar in their purpose, object and effect. As observed by Judge Donahue in the opinion in the
 
 Pomeroy case,
 
 the ordinance did not involve the expenditure of any fixed amount; it contained no stipulation as to the extent of service the village would be required to take or pay for; but, on the contrary, only fixed a rate for electric current and provided for monthly payments at that rate for current actually consumed. The company did not charge more than the rate fixed and, acceptance in writing having been filed, the village could not require it to furnish current at a less rate during the period stated. As further observed, the ordinance fixed the rate for whatever current the municipality should use in lighting its streets and public places, which would of course be the measure of its liability for such service. The clear distinction between such arrangement and the obligation of usual and ordinary contracts is there pointed out. The conclusion of the court in the
 
 Pomeroy case,
 
 however, was based upon a further reason, particularly pertinent and applicable in this case; and it is here that the court applied the rule of construction that special provisions of one section of the statute relating to a particular subject matter, although apparently in conflict with the general provisions of another section, must nevertheless be read as an exception thereto.
 

 The ordinance in the
 
 Pomeroy case,
 
 as the ordinance in the instant case, purported to be contractual in its terms; but it was enacted by the council in exercise of its legislative power conferred by Section 3982 of the General Code, which authorizes council of municipalities to prescribe prices and rates for electricity, gas or water. It was further provided by statute then and now that, upon the filing of a written acceptance of such terms and conditions by a company, council could not require the company to furnish such service at a less price during the period fixed by the ordinance.
 

 As further pointed out, it may have been contem
 
 *464
 
 plated that the rate-fixing and contract-making powers should be exercised in separate ordinances but that there is no apparent reason why the council could not combine the action in the one ordinance, as is, in fact, usually done. Broad authority is conferred by these provisions, which is limited only by the right of referendum and the right of appeal to the utilities commission under the provisions of Section 614-44, General Code. There is an additional reason for the application of the rule announced in the
 
 Pomeroy case
 
 to the instant case. Any construction and application of provisions of Section 5625-33, General Code, other than that above indicated, would give rise to serious question of its constitutionality.
 

 Subsequent to the decision of the
 
 Pomeroy case,
 
 Section 504-2, General Code, was amended. Prior thereto, upon the expiration of a franchise, the utility was at liberty to discontinue service and, on the other hand, discontinuance of such service could be required by the municipality.
 
 East Ohio Gas Co.
 
 v.
 
 City of Akron,
 
 81 Ohio St., 33, 90 N. E., 40. At the time of the passage of this ordinance, and now, a utility may not at will terminate its service. Such abandonment is now within the regulatory powers of the state utilities commission under provisions of Section 504-3, General Code. The obligation, therefore, to continue the service is one rather under legislative requirement than contractual obligation. In any event, that statutory provision must be read into every such contract. The enactment of these statutory provisions furnishes additional grounds for the inapplicability of Section 5625-33, General Code, to any obligation assumed by the municipality under the ordinance here in question. This statutory restriction is not found, nor is any reference made thereto, in the statutory provisions regulating public utilities. It could scarcely have been contemplated that such statute would limit or affect a rate-making ordinance where, upon the acceptance of its terms, the
 
 *465
 
 utility became bound but the municipality had no obligation whatever further than to pay at the rate fixed by its own ordinance if and to the extent that it did actually use such service.
 

 The statement of Judge Donahue that “The ordinance in question, while it purports to be contractual in its nature, is clearly an exercise of the legislative power” is particularly applicable here; for, as we have seen by reason of the enactment of the provisions of Sections 504-2 and 504-3, General Code, with effective provisions of a drastic, mandatory and compulsory character, the action of the municipal council in-the enactment of the ordinance here in question even more manifestly becomes an exercise of legislative power. Under present statutory requirements regulating and controlling public utilities, their duties and obligations are made mandatory. They are not conditioned upon filing the certificate or even upon the existence of a franchise or a contract.
 

 We have seen that the contract, so far as there is one by virtue of the enactment of the ordinance and the acceptance of its terms, is one which affects and determines the rate to be paid for the service ¿rendered thereunder. The obligation of the company to continue to .furnish the service, regardless of franchise or contract, is statutory. These statutory requirements are made and enforced for the protection of the public and, where rates are not agreed upon, the controversy comes within the jurisdiction of the Public Utilities Commission. In this situation, the provisions of the statute familiarly known as the Burns Law become impracticable, if not impossible, o'f application. The provisions of Section 5625-33 (d), General Code, are absolutely irreconcilable with the various statutes regulating and controlling public utilities, and the provisions of the latter particularly and specifically apply, and therefore must prevail and become determinative of the question. For the reasons stated, we have
 
 *466
 
 reached the conclusion that the demurrer to the petition should have been overruled. The judgment of the Court of Appeals is therefore reversed.
 

 Judgment reversed.
 

 Stephenson, Williams, Jones and Day, JJ., concur. Weygandt, C. J., dissents.