BOARD OF COUNTY COMMISSIONERS OF JEFFERSON COUNTY, APPELLEE, *v.* BOARD OF TOWNSHIP TRUSTEES OF ISLAND CREEK TOWNSHIP, JEFFERSON COUNTY, APPELLANT.

(No. 80-J-31—Decided September 29, 1981.)

Mr. *Stephen M. Stern,* for appellee.
Mr. *William M. Fisher,* for appellant.

DONOFRIO, J. This is an appeal from the Court of Common Pleas, Jefferson County, Ohio, from a judgment in favor of the plaintiff-appellee, Board of County Commissioners of Jefferson County, against the defendant-appellant, Board of Township Trustees of Island Creek Township, Jefferson County.

The pertinent facts herein as set forth in the agreed statement of facts by the parties are that on February 1, 1978, appellee filed an action in the court of common pleas for $47,040, interest and costs for fire hydrants previously installed in Island Creek Township by the appellee. Following appellee's complaint filed on February 1, 1978, appellant filed its answer on February 16, 1978 setting forth three defenses, essentially, that there had been a contract between the appellee and appellant for the payment of fire hydrants for a five-year period which the said appellant paid as each payment became due. But following the termination of the contract, the said appellant made no more payments to the appellee because of a lack of contact.

In February 1965, a written contract was entered into between the appellee and appellant for a period of five years. The appellant agreed to pay the sum of $60 per month per fire hydrant for a period of five years. At the end of five years, the obligations and rights under the contract with regard to said fire hydrants were to be renewed or altered by agreement of the appellee and the appellant. The appellant paid its obligation for the years under contract, but did not pay anything for the years 1971 through 1978, up to the present time.

Because of the appellant's refusal to pay for the fire hydrants following the termination of the contract, the said appellee filed suit in the Court of Common Pleas of Jefferson County, Ohio to collect for the usage of said fire hydrants.

Appellant sets forth two assignments of error as follows:

"(1) That the Court errored (*sic*) in its conclusion that the trustees or clerk of a township has authority to make expenditures of money even when they are not bound by contracts and funds have not been certified pursuant to Ohio Revised Code Section 5705.41.

"(2) That the Court of Common Pleas of Jefferson County errored (*sic*) when it held that the trustees of a township can be held liable on a theory of quasi-contract when there is no written contract to support the same."

From the record it appears that the issues presented to the lower court were:

1. Whether township trustees have authority to make an expenditure of money when they are not bound by contract and funds have not been certified pursuant to R.C. 5705.41.

2. Whether township trustees can be held liable on the theory of quasi-contract when there is no written contract to support the same.

Essentially, appellant's argument under its first assignment of error is that the trustees as public officers have no power to enter into contracts except by substantially following the statutory procedures prescribed: that pursuant to R.C. 5705.41 no subdivision or taxing unit shall make any contract or give any order involving the expenditure of money unless the fiscal officer certifies that the amount required has been appropriated for a said purpose or is in the process of collection for a said purpose.

Under its second assignment of error appellant argues that in view of the statutory limitation on the contractual

powers of public authorities for the protection of the public, it is the general policy of the Ohio courts not to enforce, directly or indirectly, any public contract which is not entered into in substantial conformity with the statute; and that it is the established rule in Ohio that there can be no recovery on the theory of *quantum meruit (valebant)* as regards public contracts which do not comply with the statutory requirements.

Appellant's citations of authorities as set forth generally are a correct proposition of law applicable to a political subdivision. However, the fact situation in the instant case does not fit the usual pattern where the political subdivision is dealing with individuals and companies, where the public at large must be protected. These statutes cited by the appellant are designed for the protection of the public and it is essential to a valid contract that such procedure be substantially followed.

The Ohio rule exempting municipalities from liability by quasi-contract is based on a policy which attempts to protect the taxpayer from the fiscal irresponsibility of government officials.

The uniqueness of the instant case is that there are two public subdivisions involved. A fair question arises — should the taxpayers of one subdivision suffer by giving free water service to the taxpayers of the other subdivision?

We cannot escape the conclusion that the authorities and doctrines of law cited by the appellant should not apply to the facts of the instant case. If the township escapes liability, then it is county taxpayers who will suffer. It is they who will pay for the fiscal irresponsibility of the township trustees, who knowingly accepted hydrant service from the appellee and now refuse to compensate it by payment of a reasonable rate for its services.

The instant case is one of first impression in Ohio. Here the party at risk was a county government which could not curtail its services at the expiration of the express contract term. Under Ohio law, curtailment of public utility service is severely constrained. R.C. 4905.20 and 4905.21. Not only was the party at risk a public party, but it was forced to remain at risk by considerations of public welfare that supersede the goals underlying the strict Ohio rule.

The pertinent provision of R.C. 4905.21 is:

"* * * and any public utility or political subdivision desiring to abandon or close, or have abandoned, withdrawn, or closed for traffic or service all or any part of any line, pumping station, generating plant, power station, sewage treatment plant, or service station, referred to in section 4905.20 of the Revised Code, shall make application to the public utilities commission in writing."

In the instant case the county furnishing the water service stands in a similar position as a public utility since it is restricted by statute from shutting off water supply services and to that extent the case of *Ohio Water Serv. Co.* v. *Washington* (1936), 131 Ohio St. 459 [6 O.O. 145], states in the syllabus:

"The provisions of Section 5625-33 (d), General Code, requiring as a condition precedent to the execution of a contract by a municipality that there be a certificate of the fiscal officer that funds to meet the same have been appropriated for such purpose and then in the treasury or in process of collection, have no application to public utility rate ordinances and service contracts. * * *"

We, therefore, overrule appellant's first assignment of error.

As to the issue of whether or not a public subdivision could be liable in quasi-contract in cases of this sort, no cases exactly in point are brought to our attention, although appellee cites the case of *Richland County* v. *Mansfield* (1929), 27 N.P. (N.S.) 293. That case pivots on the issue that:

"The statutory provision for committing persons who have been convicted of violation of city ordinances to the

county jail, in cities which have no workhouse or house of correction, is mandatory, and notwithstanding no contract has been entered into between the city and county for such service, a statutory liability arises, against the city and in favor of the county * * *." *Richland, supra,* paragraph one of the syllabus.

Looking to our sister state, we find the case of *Arcade County Water Dist.* v. *Arcade Fire Dist.* (1970), 6 Cal. App. 3d 232, 85 Cal. Rptr. 737, at page 236, which states: "An 'implied-in-law contract' is actually not a contract at all, but merely an obligation imposed by law to bring about justice."

In *Arcade, supra,* the court held that fire protection districts were liable to water districts for hydrant services supplied where fire districts had continued to pay assessed charge for approximately six years, refused to pay charge only after rate was increased, and had continued to accept service.

In the instant case, the appellant township having accepted the water service, we find there was no obligation upon the appellee county to supply free water service to the township. Here, as in *Arcade,* the parties stood in substantially the same position. The plaintiff provided hydrant service to an entire water district, of which the defendant district was only a part. There, also, the plaintiff had a statutory duty to continue service even when unpaid. There, also, the defendant continued to accept service while negotiating for a rate determination; negotiations were never brought to fruition and the defendant subsequently denied liability.

For the foregoing reasons we overrule appellant's second assignment of error and, accordingly, affirm the judgment of the trial court.

*Judgment affirmed.*

LYNCH, P.J., and O'NEILL, J., concur.