OPINION
{¶ 1} Defendants-appellants, the Village of Smithfield, et al. (hereinafter collectively referred to as Smithfield), appeal the decision of Jefferson County Common Pleas Court finding that appellants owe plaintiffs-appellees, the Board of County Commissioners of Jefferson County, et al. (hereinafter collectively referred to as Jefferson County), $267,354.24 plus interest for water purchased by Smithfield from Jefferson.
 {¶ 2} In September 1999, the water wells for Smithfield went dry. Smithfield contacted Jefferson County and asked if they could provide them with potable water. Utilizing an existing line, Jefferson County began supplying Smithfield with water. Foreseeing that Smithfield was going to be using Jefferson County as a permanent supplier of water, Jefferson County expended $195,000.00 in constructing a more permanent water line to Smithfield.
 {¶ 3} The agreement between Jefferson County and Smithfield to provide water was never reduced to writing or formalized by either party. Jefferson County continued to supply water to Smithfield from November 1, 1999 to present. However, Smithfield did not pay Jefferson County the entire amount billed.
 {¶ 4} Due to the growing arrears, representatives from both parties met in June 2002 to discuss the matter. Smithfield's position was that it was not paying the full amount due to billing discrepancies.
 {¶ 5} When Smithfield continued to refuse to pay the full amount, Jefferson County filed a complaint against Smithfield on April 23, 2004.[1] Jefferson County set forth three claims — complaint on account, breach of contract, and unjust enrichment — and sought $256.364.50 based on a rate of $3.00 per thousand gallons.
 {¶ 6} On July 19, 2004, Smithfield filed a motion for summary judgment based on R.C. 735.05. R.C. 735.05 requires that expenditures above a certain amount be "authorized and directed by ordinance of the city legislative authority." Since Smithfield never passed an ordinance pursuant to R.C. 735.05 authorizing the purchase of water from Jefferson County, Smithfield argued that the alleged agreement was invalid and unenforceable. CitingMillersburg v. Wurdak (1919), 30 Ohio Dec. 218. Citing this Court's decision in Bd. of Cty. Commrs. v. Bd. of Twp. Trustees
(1981), 3 Ohio App.3d 336, 3 OBR 391, 445 N.E.2d 664, Jefferson County countered that R.C. 735.05 was not applicable when both of the involved parties are political subdivisions. On September 24, 2004, the trial court denied Smithfield's motion based on Bd. ofCty. Commrs.
 {¶ 7} The matter then proceeded to a bench trial on April 13, 2005. The parties stipulated to the amount of water sold to Smithfield and the amount of money Smithfield had paid. The principal dispute was what price the parties had agreed to for the water. Jefferson County contended that it was $3.00 per thousand gallons and Smithfield argued that it was $2.00 per thousand gallons.
 {¶ 8} On July 21, 2005, the trial court sided with Jefferson County and found the agreed upon rate to be $3.00 per thousand gallons. The trial court awarded Jefferson County the balance due of $267,354.24. This appeal followed.
 {¶ 9} Smithfield raises two assignments of error. Smithfield's first assignment of error states:
 {¶ 10} "THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO GRANT SUMMARY JUDGMENT IN FAVOR OF THE VILLAGE OF SMITHFIELD."
 {¶ 11} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Bonacorsi v. Wheeling Lake Erie Ry. Co., 95 Ohio St.3d 314, 2002-Ohio-2220,767 N.E.2d 707, at ¶ 24. Summary judgment is properly granted when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v. Willis Day Warehousing Co.
(1976), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46; Civ.R. 56(C).
 {¶ 12} Since Smithfield never passed an ordinance pursuant to R.C. 735.05 authorizing the purchase of water from Jefferson County, Smithfield argues that the alleged agreement to provide water was invalid and unenforceable. Jefferson County argues that R.C. 735.05 is not applicable when both of the involved parties are political subdivisions.
 {¶ 13} R.C. 735.05 states, in pertinent part:
 {¶ 14} "The director of public service may make any contract, purchase supplies or material, or provide labor for any work under the supervision of the department of public service involving not more than twenty-five thousand dollars. When an expenditure within the department, other than the compensation of persons employed in the department, exceeds twenty-five thousand dollars, the expenditure shall first be authorized and directed by ordinance of the city legislative authority."
 {¶ 15} Smithfield cites Millersburg v. Wurdak (1919), 30 Ohio Dec. 218, in support of its position. Millersburg
interpreted G.C. 4328, the predecessor to R.C. 735.05. InMillersburg, the Village of Millersburg contracted with Wurdack, a non-public entity, to supply water to the Village. The contract exceeded the statutory amount which required authorization by a municipal ordinance. Because the Village had not passed an ordinance authorizing the contract, the court applying and interpreting G.C. 4328, found the contract void and unenforceable.
 {¶ 16} In support of its position, Jefferson County cites this Court's decision in Bd. of Cty. Commrs. v. Bd. of Twp.Trustees (1981), 3 Ohio App.3d 336, 3 OBR 391, 445 N.E.2d 664. Jefferson County was also a party in that case. Jefferson County had a contract with the Township of Island Creek to provide water to its fire hydrants for a period of five years. After five years, Jefferson County continued to provide the water for an additional seven years without a written contract. Island Creek refused to pay for the additional seven years of water supplied based on the lack of a written contract and R.C. 5705.41, the statute for townships that is the corollary of R.C. 735.05. Jefferson County sought payment on theories of quasi-contract. The trial court awarded judgment in favor of Jefferson County despite noncompliance with R.C. 5705.41 and the lack of a written contract.
 {¶ 17} On appeal, this Court noted that Island Creek's arguments were generally correct when dealing with a dispute between a government entity and a private or non-public entity. However, this Court held that the statute did not apply when dealing with a dispute between two political subdivisions. Specifically, this Court explained:
 {¶ 18} "[Island Creek's] citations of authorities as set forth generally are a correct proposition of law applicable to a political subdivision. However, the fact situation in the instant case does not fit the usual pattern where the political subdivision is dealing with individuals and companies, where the public at large must be protected. These statutes cited by the appellant are designed for the protection of the public and it is essential to a valid contract that such procedure be substantially followed.
 {¶ 19} "The Ohio rule exempting municipalities from liability by quasi-contract is based on a policy which attempts to protect the taxpayer from the fiscal irresponsibility of government officials.
 {¶ 20} "The uniqueness of the instant case is that there are two public subdivisions involved. A fair question arises — should the taxpayers of one subdivision suffer by giving free water service to the taxpayers of the other subdivision?
 {¶ 21} "We cannot escape the conclusion that the authorities and doctrines of law cited by the appellant should not apply to the facts of the instant case. If the township escapes liability, then it is county taxpayers who will suffer. It is they who will pay for the fiscal irresponsibility of the township trustees, who knowingly accepted hydrant service from [Jefferson County] and now refuse to compensate it by payment of a reasonable rate for its services." Bd. of Cty. Commrs., 3 Ohio App.3d at 338,3 OBR 391, 445 N.E.2d 664
 {¶ 22} The case cited by Smithfield is an eighty-seven year old common pleas court case from a county in another appellate district. The case cited by Jefferson County is an appellate case from this district and, therefore, is binding precedent in this matter. Consequently, R.C. 735.05 does not apply to this case since both parties are political subdivisions and Smithfield may be subject to liability on the theory of quasi-contract or quantum meruit even in the absence of a written contract.
 {¶ 23} Accordingly, Smithfield's first assignment of error is without merit.
 {¶ 24} Smithfield's second assignment of error states:
 {¶ 25} "ASSUMING A QUASI-CONTRACT, THE TRIAL COURT ERRED IN DETERMINING THE PRICE OF $3.00 PER THOUSAND GALLONS OF WATER."
 {¶ 26} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. See, also, Gerijo, Inc. v. Fairfield (1994),70 Ohio St.3d 223, 226, 638 N.E.2d 533. The court "must indulge every reasonable presumption in favor of the lower court's judgment and finding of facts." Gerijo, 70 Ohio St.3d at 226, 638 N.E.2d 533
(citing Seasons Coal Co., Inc. v. Cleveland [1984],10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273). "In the event the evidence is susceptible to more than one interpretation, [the court] must construe it consistently with the lower court's judgment." Id. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co., 10 Ohio St.3d at 80, 10 OBR 408,461 N.E.2d 1273.
 {¶ 27} On appeal, Smithfield concedes that Jefferson County met its burden in proving that there was an agreement between the two to supply and purchase potable water. However, Smithfield argues that there was never a meeting of the minds on a key term of the agreement — price. Jefferson County contends that Smithfield agreed to pay $3.00 per thousand gallons of water, the same rate it charged to its other bulk rate customers. Smithfield, on the other hand, contends that the agreement was for $2.00 per thousand gallons. Smithfield bases the $2.00 price on its past dealings with Jefferson County concerning water. Before its own wells went dry, Smithfield argues that Jefferson County used to purchase water from Smithfield and resell it to Piney Fork for $2.00 utilizing Smithfield's water lines. Although Jefferson County can no longer use Smithfield as a water source to supply Piney Fork, Smithfield contends that Jefferson County still utilizes Smithfield's waterlines to supply Piney Fork, albeit from a different source.
 {¶ 28} At trial, both parties stipulated that Jefferson County had provided Smithfield with 185,022,000 gallons of water from November 1, 1999 up through and until December 31, 2004. Jefferson County presented the testimony of James Zorbini (Zorbini) and Jack Gilmore (Gilmore). At the time Jefferson County began supplying water to Smithfield, Zorbini was the Director of Sanitary Engineering for the Jefferson County Water and Sewer District (the District). Gilmore is the current Sanitary Engineer for the District.
 {¶ 29} Smithfield presented the testimony of James Daganhardt (Daganhardt), Clarence Harris (Harris), Katherine Staten, and Robert Staten, Jr. Deganhardt and Harris are former members of Smithfield's Water Board. Robert Staten, Jr., is a member of Smithfield's Board of Public Affairs. Katherine Staten is Clerk for the Board of Public Affairs.
 {¶ 30} When Jefferson County initially began supplying water to Smithfield in November 1999, Jefferson County utilized an existing emergency line and connection to Smithfield to supply the water. However, Zorbini testified that the emergency connection would not be able to handle the water needs for Smithfield on a permanent basis. In response, the Jefferson County Commissioners authorized Zorbini to expend $195,000.00 in order to establish the proper connection. The project involved engineering and design of the connection and material costs.
 {¶ 31} Zorbini testified that, in response to an inquiry from Robert Staten, Jr. on November 24, 1999, he informed him that the rate for the water being sold was going to be $3.00 per thousand gallons and that he never objected to that rate. When it became apparent that Smithfield was not going to pay the total amount billed by Jefferson County, officials from both sides met on June 3, 2002, to discuss the matter. Gilmore testified that the rate of $3.00 was mentioned at that meeting and that it was never disputed. In fact, most of the testimony establishes that the water rate itself was never disputed or raised as an issue between the parties until the commencement of this litigation.
 {¶ 32} Gilmore testified that the Jefferson County Water and Sewer District has four bulk rate customers and that bulk rate customers are charged $3.00 per thousand gallons. Including Smithfield, the other bulk rate customers are the Village of Richmond, the Village of Hopedale, and the Village of Wintersville.
 {¶ 33} Daganhardt testified that Smithfield never agreed to pay $3.00 at the meeting, but was aware of the rate, and that though they were paying the $3.00 rate, they wanted to pay $2.00. Harris testified that Smithfield agreed to pay Jefferson County, but that Smithfield did not agree to pay the rate of $3.00 per thousand gallons of water. Katherine Staten testified that the clerk's certification on the payments made to Jefferson County said it was a payment of a contractual obligation but that she did not know what that meant. Robert Staten, Jr., testified that Jefferson County officials did not represent the $3.00 rate to everyone on the board, that he did not agree to pay the $3.00 rate, and that Smithfield knew that the $3.00 rate was being charged and did not like it.
 {¶ 34} As the trial court aptly observed, Smithfield offered no credible evidence that the rate was $2.00 per thousand gallons, although there was ample evidence that a $2.00 rate wasdesired. At best, this is the type of case where the evidence was susceptible to more than one interpretation. Therefore, in that type of situation, this Court must construe it consistently with the lower court's judgment. Gerijo, supra. In addition, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. Kalain,
supra. In sum, the trial court's judgment was not against the weight of the evidence.
 {¶ 35} Accordingly, appellant's second assignment of error is without merit.
 {¶ 36} In its reply brief, Smithfield appears to advance a new, additional assignment of error which states:
 {¶ 37} "APPELLANT'S RELIANCE ON A HEARSAY STATEMENT WITHIN A LETTER SUBMITTED AT TRIAL (EXHIBIT 130) WITHOUT THE BENEFIT OF THE AUTHOR OF THE LETTER IS UNRELIABLE UNDER THE RULES OF EVIDENCE AND SHOULD NOT BE CONSDIERED [sic] TO CONCLUSIVELY ESTABLISH AGREEMENT ON A CONTRACT PRICE BY THE VILLAGE[.]"
 {¶ 38} During the direct examination of James Zorbini (Zorbini), the former Director of Sanitary Engineering for the Jefferson County Water and Sewer District (the District), counsel for Jefferson County had Zorbini direct his attention to Exhibit 130. Exhibit 130 is a letter from Craig J. Allen, an assistant prosecuting attorney who represented the District and attended the June 3, 2002 meeting, to Heather Fisher, an attorney representing Smithfield. It is essentially a letter warning of litigation if Smithfield did not respond to Jefferson County's requests for payment. Counsel for Jefferson County laid a foundation for admission of the exhibit, counsel for Smithfield objected to its admission, and the trial court overruled Smithfield's objection. Counsel for Jefferson County then proceeded to question Zorbini as follows:
 {¶ 39} "Q Mr. Zorbini, I would direct your attention to the second paragraph of this letter. In the last sentence, and I read, `Nevertheless Mr. Robert D. Staten, Jr., during a meeting at the district's office on 3, June, 2002, acknowledged that in 1999 the Village agreed to purchase potable water from the district at a price of $3.00 per thousand gallons.'
 {¶ 40} "A I see that.
 {¶ 41} "Q Did I read it correctly?
 {¶ 42} "A Yes, you did.
 {¶ 43} "Q Were you at that meeting?
 {¶ 44} "A Yes, I was.
 {¶ 45} "Q Did that in fact happen?
 {¶ 46} "A Yes, it did.
 {¶ 47} "Q Is this an accurate statement?
 {¶ 48} "A Yes, it is." (Tr. 20.)
 {¶ 49} Counsel for Smithfield then renewed her objection to the admission of the exhibit and the trial court again overruled it.
 {¶ 50} Smithfield argues that it was an abuse of discretion for the trial court to allow admission of the exhibit because admission of the letter was precluded under the rules of evidence. Specifically, Smithfield argues that neither the author of the letter nor its recipient testified at trial, therefore making the letter inadmissible hearsay. Moreover, Smithfield argues that it was error because the trial court considered its contents, particularly the portion highlighted by counsel for Jefferson County, as "conclusive proof" that Smithfield had agreed to the $3.00 rate.
 {¶ 51} Despite the alleged error, Smithfield did not properly raise this issue on appeal. Smithfield did not argue this issue in its initial merit brief, but rather raised it in its reply brief. "A reply brief is not to be used by an appellant to raise new assignments of error or issues for consideration; it is merely an opportunity to reply to the appellee's brief."Scibelli v. Pannunzio, 7th Dist. No. 02CA175, 2003-Ohio-3488, at ¶ 11, citing Sheppard v. Mack (1980), 68 Ohio App.2d 95, 97,427 N.E.2d 522, and App.R. 16(C). Therefore, Smithfield's argument is not properly raised for our review.
 {¶ 52} Assuming arguendo we were to find error with the trial court's admission of Exhibit 130, we would likely find the error harmless. "Civ.R. 61 sets forth the harmless error rule in civil cases, providing that no error or defect in any ruling is, `ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice.'" Chieffo v. YSDIndustries, Inc., 157 Ohio App.3d 182, 2004-Ohio-2481,809 N.E.2d 1186, at ¶ 24.
 {¶ 53} The error alleged by Smithfield is harmless for two reasons. First, even if the letter itself should not have been admitted, Zorbini was at the meeting and able to independently establish the substance of the statement contained in the letter. When asked if what was contained in the statement happened, he replied, "Yes, it did." (Tr. 20.) Second, even in the absence of the letter, as detailed under Smithfield's second assignment of error, there was other competent, credible evidence to support to the trial court's decision, including Zorbini's own independent recollection of the June 3, 2002 meeting. There is nothing in the record that the trial court relied upon the letter as "conclusive proof" that Smithfield agreed to the $3.00 rate.
 {¶ 54} Having found both Smithfield's assignments of error without merit, the judgment of the trial court is hereby affirmed.
Vukovich, J., concurs.
Waite, J., concurs.
[1] Plaintiff-appellees are the Board of County Commissioners of Jefferson County and the Jefferson County Water and Sewer District. Defendants-appellants are the Village of Smithfield, its Board of Public Affairs, Water Department, and Office of Village Treasurer.